KELLEY, Appellee,

v.

KELLEY, Appellant.

[Cite as *Kelley v. Kelley* (1991), 76 Ohio App.3d 505.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 59150 and 60536.

Decided Dec. 9, 1991.

*Joyce E. Barrett,* for appellee.

*Seeley, Savidge & Aussem* and *Keith A. Savidge,* for appellant.

PATRICIA A. BLACKMON, Judge.

Appellant Richard J. Kelley has timely appealed two separate cases in which the Cuyahoga County Court of Common Pleas, Division of Domestic Relations, rendered a judgment granting a decree of divorce and a judgment finding appellant in contempt. These two cases have been consolidated for purposes of this appeal.

For the reasons set forth below, we affirm the judgment granting the divorce and reverse the judgment finding the appellant in contempt.

This action arises from a divorce action filed by appellee Marie A. Kelley. Appellant counterclaimed for divorce, seeking the enforcement of a prenuptial agreement, or in the alternative the equitable distribution of the assets.

On June 5, 1989, prior to trial, the parties entered into an "in-court agreement," which was read into the record. The in-court agreement provided for the division of the marital estate and stipulated that prior to the agreement becoming a journal entry, appellant was required to fulfill certain obligations to facilitate the distribution of the marital assets.

Thereafter, the referee asked appellant and appellee if the agreement represented their intentions and understandings. Both appellant and appellee responded that they understood all the terms and conditions of the agreement, that no terms were missing or omitted, and that the agreement constituted a full and final settlement of all matters pertaining to the marriage. They also represented that the agreement was fair, and that they understood that the agreement would be incorporated into a journal entry that would constitute a judgment for divorce. Finally, the in-court agreement, which was read into the record, was signed by both parties and their attorneys.

On December 4, 1989, appellee filed a motion to show cause why appellant should not be held in contempt.

On December 30, 1989, the trial court heard testimony from both appellant and appellee. Appellant did not dispute the accuracy of the agreement, but argued that it was not final. Additionally, appellant argued that certain financial setbacks had changed his position. He claimed that as a result of those setbacks he was having difficulty meeting his obligations under the in-court agreement.

The trial court overruled the motion and determined that appellant could not be held in contempt, since the in-court agreement had not been journalized as

a judgment entry. Thereafter, the trial court journalized the in-court agreement and made it a part of a divorce decree, which resulted in the divorce becoming final. Although the judgment entry was an accurate reflection of the in-court agreement of the parties, appellant refused to sign the judgment entry and objected to its execution because he had not had an opportunity to review the judgment entry. Appellant's objection was overruled and the trial court journalized the divorce decree judgment.

Appellee filed a second motion to show cause why appellant should not be held in contempt. The trial court referee conducted a hearing on the contempt motion, which included four days of testimony.

The trial court referee filed a report and recommended that appellee's motion to show cause be granted. The trial court referee further recommended that a judgment be granted against appellee for $16,340.62 in alimony arrears, $1,765.71 in real estate tax arrears, $21,648.60 in attorney fees obligations, $2,792.83 in college expenses for their daughter Allison, and $2,000 in attorney fees for the contempt proceeding.

The recommendation was based upon the following findings of fact:

The parties were divorced on December 20, 1989, pursuant to the trial court's judgment entry which incorporated the in-court separation agreement.

The referee found appellant nine months in arrears for alimony in the amount of $15,750 plus interest in the amount of $590.62 for a total of $16,340.62.

Appellee paid $1,664.19 in real estate taxes, which was the obligation of the appellant; with interest, that amount is $1,765.71.

Appellant had an obligation to pay $125,000 in attorney fees to appellee. $106,227.35 was paid, leaving $18,772.65 unpaid; with interest, that amount is $21,648.60.

Appellee paid $7,834.70 for their daughter Allison's college expenses; $5,041.87 was received by appellee through a custodial account, leaving $2,792.83 remaining under appellant's obligation.

Appellee incurred $7,665.00 in attorney fees in the contempt proceeding, and the referee recommended $2,000 in attorney fees.

The referee concluded that:

" * * * while the aforementioned amounts have not been paid, it is unclear whether the failure to make the payments is contemptuous as the Defendant testified as to numerous financial setbacks he has sustained. The Defendant's good faith attempts to pay to the Plaintiff in the future the amounts owed her may be the best evidence of whether the Defendant's non-payment has been willful."

The trial court entered judgment against appellant for contempt and approved the referee's recommendation with one modification. Appellant was only found to be in arrears of college tuition in the amount of $1,396.32. No transcript was provided to the trial court for its decision.

The instant appeal involves the December 20, 1989 divorce decree in case No. 59150 and the August 24, 1990 finding of contempt in case No. 60536, and appellant assigns the following errors:

"When one party to an in-court agreement insists that it should not be journalized until a condition is met by the other party and when genuine issues of fact exist as to the agreement itself, such agreement cannot be summarily reduced to judgment by the trial court absent a hearing or trial on the issues which are presented by the agreement."

"When a court summarily approves, without either a hearing or trial, a journal entry concerning an alleged in-court agreement which is prepared by one party when the opposing party objects to the proposed entry as being incomplete, inequitable and contrary to law, the court deprives the opposing party the due process guarantees of the Fifth and Fourteenth Amendments to the United States Constitution as well as Article I, Section 16 of the Ohio Constitution."

"When an in-court agreement is specifically conditioned on the provision that no judgment entry shall be journalized until all other provisions of the agreement are met and no decision was announced by the court in the case, Domestic Relations Division Loc.R. 28 does not apply."

Appellant's first assignment of error claims that an in-court settlement agreement with conditions for performance prior to journalization cannot be incorporated as a part of a final decree without a hearing. We disagree.

A trial court's authority to enforce in-court settlement agreements is discretionary. *Spercel v. Sterling Industries, Inc.* (1972), 31 Ohio St.2d 36, 60 O.O.2d 20, 285 N.E.2d 324. This discretionary standard applies to domestic relations cases as well. *Holland v. Holland* (1970), 25 Ohio App.2d 98, 54 O.O.2d 175, 266 N.E.2d 580. See, also, *Bauer v. Bauer* (Apr. 2, 1981), Cuyahoga App. No. 42805, unreported.

In *Holland,* the trial court held that:

"An in-court agreement of the parties concerning division of property and alimony adopted by the court as its judgment thereon is enforceable by the court and may be incorporated into the judgment entry even in the absence of an agreement in writing, or an approval of the judgment entry signed by a party or his attorney." *Id.* at paragraph two of the syllabus.

This court has held that an in-court agreement is enforceable, even when a party asserts a mistake, because he thought it was only a proposal subject to further negotiation. *Burley v. Burley* (June 18, 1981), Cuyahoga App. No. 41913, unreported, 1981 WL 10348 (where the trial court found allegations of a mistake unsupported by the record). An in-court agreement is also enforceable notwithstanding a condition that it be reduced to writing so the parties can look it over before it becomes final. *Neumann v. Neumann* (Feb. 10, 1983), Cuyahoga App. No. 45050, unreported, 1983 WL 5756.

In *Neumann,* this court determined that the request to have an agreement reduced to writing to verify that the terms agreed upon were incorporated therein made it clear that an agreement had been reached. *Id.* at 4. Once the in-court agreement had been reached, this condition was not sufficient grounds for a party to change his mind about the agreement and claim it was not final. *Id.*

"The enforceability of such an agreement depends rather on whether the parties have manifested an intention to be bound by its terms and whether these intentions are sufficiently definite to be specifically enforced." *Normandy Place Assoc. v. Beyer* (1982), 2 Ohio St.3d 102, 105–106, 2 OBR 653, 656, 443 N.E.2d 161, 164.

▮ In the instant case, appellant did not object to the terms of the agreement. He changed his mind about entering into the agreement, because of his change in circumstances. His argument relied on the condition that partial performance on his part must take place prior to finalization.

The condition of partial performance is similar to the condition in *Neumann, supra.* The requirement of performance, to which the appellant substantially complied, is sufficient evidence that an enforceable agreement exists. There is no evidence in the record that the intent of this condition was to change the terms of this agreement. In fact, the parties agreed on June 5, 1989 that the agreement was final and would appear in judgment entry as part of a divorce decree.

Appellant's attempt to distinguish the case *sub judice* from *Lash v. Lash* (Feb. 22, 1990), Cuyahoga App. Nos. 56155, 56837, 57816, unreported, 1990 WL 15329, is unpersuasive. In *Lash,* this court determined that an in-court agreement is not conditioned upon a party's ability to pay absent evidence of that intent. *Id.* at 15. Appellant failed to produce any evidence that the agreement was contingent upon his ability to pay.

The record of the first contempt hearing reveals that there was an agreement which was not contingent upon appellant's ability to pay. Appellant's counsel in the first show cause hearing stated that:

"The thing is this: Mr. and Mrs. Kelley entered into an in-court agreement. At that time Mr. Kelley had every hope, attempt, and aspiration he would be able to live up to the agreement."

At the same hearing, appellant's counsel objected to the journalization of the in-court agreement on the basis that he needed a chance to restudy it. No objections were made at the time of the execution on June 5, 1989. Therefore, the intent of the parties on June 5, 1989 was clearly to make an agreement by the terms they expressed in court on that day.

Therefore, the trial court's incorporation of the in-court agreement into its final decree was proper where the divorce decree accurately reflected the terms of the in-court agreement. Appellant's first assignment is not well taken.

Appellant's second assignment of error claims that due process requires a hearing prior to journalization of the in-court settlement.

■ This court has held that if there is a dispute about the existence of an agreement or its terms, the trial court should hold a hearing to reliably determine the contents of the agreement. *Zigmont v. Toto* (1988), 47 Ohio App.3d 181, 547 N.E.2d 1208. However, if the dispute is premised on the inability to review a proposed journal entry rather than the existence of an agreement, error does not occur unless the appellant demonstrates prejudice. *Zucker v. Cook Coffee Co.* (June 19, 1986), Cuyahoga App. No. 50804, unreported, 1986 WL 6972. See, also, *Neumann*.

■ Appellant failed to present any evidence of prejudice nor did appellant request a hearing in the trial court. The judgment entry of the trial court accurately represents the in-court agreement of the parties on June 5, 1989. Appellant's counsel confirmed this fact on December 20, 1989 when he represented that an agreement had been reached.

The only basis appellant stated for his objection was his inability to review the in-court agreement before the final decree. Inspection of an in-court agreement is insufficient grounds for reversal absent prejudice. See *Zucker*.

Appellant's second assignment of error is not well taken.

■ Appellant's third assignment of error claims that Domestic Relations Loc.R. 28 does not apply.

While the parties agreed that the judgment entry did not have to be journalized within thirty days in compliance with Domestic Relations Loc.R. 28(A), there is no indication that they intended to suspend any other portion of the rule. Appellee suggests that Domestic Relations Loc.R. 28(B) applies in limiting the time for objections.

Even if Domestic Relations Loc.R. 28 does not apply, there was no attempt by appellant to file any objection with the trial court to the in-court agreement. It did not become an issue until appellant faced a contempt hearing. Nonetheless, it is of no consequence in this case, because no prejudice occurred. See *Zucker*.

Appellant's third assignment of error is not well taken.

Appellant's final assignment of error is the subject of his second appeal and challenges the trial court's authority to find him in contempt when the record is devoid of facts from which to make an independent determination of contempt.

In the instant case, the referee made the following conclusory statement: "[I]t is unclear whether the failure to make payments is contemptuous * * *." The referee added that the appellant had had "numerous financial setbacks," but failed to give the trial court any factual background for an independent analysis of whether that behavior was contemptuous.

■ The law in Ohio is that a referee's recommendation may not be adopted if it lacks findings of fact in support of the referee's conclusion that are sufficient for the trial court to make an independent analysis of the case. *Nolte v. Nolte* (1978), 60 Ohio App.2d 227, 14 O.O.3d 215, 396 N.E.2d 807. Furthermore, the court in *Nolte* held that "[w]henever a referee's report contains a legal conclusion but omits the facts necessary to reach that conclusion, the judgment is voidable." *Id.* at 231, 14 O.O.3d at 217, 396 N.E.2d at 811. This court, in following *Nolte*, reversed a trial court's decision and held that a conclusory statement similar to the one contained herein was insufficient to sustain an independent analysis of the facts by the trial court, and was a deprivation of the litigant's right to a fair trial. *DiCarlo v. DiCarlo* (Nov. 20, 1980), Cuyahoga App. No. 42081, unreported, at 4 (where referee's report made conclusory statement without providing the facts to support it).

■ Therefore, it is this court's decision that the conclusory statement by the referee absent facts necessary to reach the conclusion is insufficient to sustain a finding of contempt. In fact, the statement suggest that the failure to make payments when evidenced by numerous financial setbacks might not be contemptuous. Because the record lacks facts sufficient for the trial court to make an independent determination of contempt, appellant's final assignment of error is well taken.

Judgment in appellant's first appeal, case No. 59150, is affirmed.

Judgment in appellant's second appeal, case No. 60536, is reversed and remanded.

*Judgment accordingly.*

NAHRA, P.J., concurs.

PATTON, J., dissents.

PATTON, Judge, dissenting.

I respectfully dissent from the majority's disposition of appellant's first and second assignments of error. I would find that appellant was entitled to a hearing prior to the trial court's journalization of an in-court settlement agreement where the agreement was specifically made contingent upon the fulfillment of enumerated obligations prior to its final journalization. Thus, I would sustain the appellant's first and second assignments of error and reverse and remand for a hearing to determine the validity and terms of the in-court agreement.

In discussing the reduction of an in-court settlement to judgment this court has stated:

"Ordinarily, an in-court settlement binds the parties, even if they did not reduce it to writing. *Spercel v. Sterling Industries, Inc.* (1972), 31 Ohio St.2d 36, 60 O.O.2d 20, 285 N.E.2d 324, paragraph one of the syllabus; *Rodgers v. Rodgers* (May 7, 1987), Cuyahoga App. No. 52105, unreported. The trial court can properly enter a judgment which accurately reflects an agreement they made in open court and read into the record. *Bolen v. Young* (1982), 8 Ohio App.3d 36, 37, 8 OBR 39, 40, 455 N.E.2d 1316, 1318.

"However, the court should not reduce an agreement to judgment without reliably determining its content. Thus, the court should hold an evidentiary hearing to resolve any dispute about the existence of an agreement or its terms. *Morform Tool Corp. v. Keco Industries, Inc.* (1971), 30 Ohio App.2d 207, 210, 59 O.O.2d 320, 321, 284 N.E.2d 191, 193; *Arendt v. McDonald* (Mar. 28, 1985), Cuyahoga App. No. 48956, unreported." *Zigmont v. Toto* (1988), 47 Ohio App.3d 181, 185, 547 N.E.2d 1208, 1212.

My review of the record and the in-court agreement, which provided that it would not be journalized until all of its terms had been met, persuades me that there exists a legitimate dispute as to whether a valid agreement exists. Thus, it is my reasoned opinion that the trial court should have conducted an evidentiary hearing to determine whether a valid settlement agreement had in fact been entered into by the parties.

Furthermore, I would find that the case of *Lash v. Lash* (Feb. 22, 1990), Cuyahoga App. Nos. 56155, 56837, 57816, unreported, 1990 WL 15329 is not

applicable to the facts of the instant case.  In *Lash,* unlike the instant case, the validity of the settlement agreement which was subsequently incorporated in the court's judgment entry was not seriously disputed.

Accordingly, I would sustain the appellant's first and second assignments of error and remand for further proceedings.