OPINION
Defendant-appellant Donald Camsky appeals the decision of the Belmont County Common Pleas Court, Domestic Relations Division, which incorporated an in-court agreement by appellant to apply for early retirement Social Security benefits into an order of the court. For the following reasons, the trial court's judgment is reversed and this cause is remanded.
 STATEMENT OF FACTS
Appellant and appellee Irene Camsky were divorced by decree on November 8, 1993. The decree ordered appellant to pay $50 per month in spousal support to appellee until she dies, remarries or becomes eligible for governmental- or employer-sponsored health care. This spousal support provision contained no reservation of jurisdiction, and appellee did not appeal the lack thereof. The decree also stated that the parties would divide equally all rights to pension and Social Security benefits which were acquired during marriage. At the time, appellant was receiving monthly distributions from a fully vested pension.
Almost two years later, a Qualified Domestic Relations Order (QDRO) was filed, assigning half of the monthly pension distributions to appellee. The court stated that it retained jurisdiction to amend the QDRO to effectuate the court's intent under the QDRO and the judgment and to provide for the equalization of the total pension and social security benefits received by the parties. Both parties individually received $752.52 a month from the pension plan.
In February 1999, the monthly distribution decreased to $378.52 each. This decrease was the result of appellant reaching age 62 and thus becoming eligible to apply for early retirement Social Security benefits.[1] These early retirement benefits would total approximately $800 per month. Rather than apply for these benefits, appellant desired to wait until he was 65 so that he could receive full benefits totaling more than $1,000 per month.
After her monthly distributions decreased, appellee filed a motion for contempt and other relief, seeking half of the Social Security benefits which she believed appellant was collecting. She did not seek to invoke the reserved jurisdiction under the QDRO to adjust the amount of the pension but rather sought a court order awarding her half of the early retirement Social Security benefits. A hearing proceeded on May 24, 1999. First, the court stated that this was not a case of contempt. Over appellant's objection, the court ordered the case to proceed as a request for modification of spousal support, although appellant had no prior notice of this issue. Then, in the middle of the hearing, the court changed its mind and said that it could be a contempt case.
While appellant was testifying, the court opined that appellee barely had enough money to live and asked appellant if he would be willing to agree to apply for Social Security benefits. (Tr. 26-27). Much to the surprise of his attorney and in direct contravention of his entire defense at the hearing, appellant agreed to apply for Social Security benefits. Since the case appeared to be settled, the hearing was terminated. Appellee's counsel drew up a judgment entry which incorporated the agreement reached at the hearing into a court order. Upon receiving the entry, appellant's counsel returned it unsigned, stating that he was not authorized to execute the agreement.
On June 2, 1999, appellant filed a motion for a rehearing. This motion was accompanied by appellant's affidavit which stated that he felt compelled to agree to apply for early retirement benefits since he was afraid that the court was going to hold him in contempt and modify his spousal support obligation. The motion argued that the agreement was involuntary and that the court should disregard his prior assent. The motion also asked the court to proceed to rule on appellee's motion for contempt and/or for modification of spousal support.
The same day, the court signed the entry prepared by appellee which stated that appellant had agreed to voluntarily apply for Social Security benefits. Appellant's motion for rehearing was never specifically addressed. The within timely appeal followed.
 ASSIGNMENTS OF ERROR
Appellant sets forth the following five assignments of error:
 "THE TRIAL COURT ERRED BY PROCEEDING WITH A CONTEMPT HEARING WITHOUT ADVISING THE APPELLANT OF THE SPECIFIC PROVISIONS OF THE PRIOR ORDERS OF THE COURT WHICH WERE ALLEGED TO HAVE BEEN VIOLATED AFTER THE APPELLANT'S COUNSEL REQUESTED SUCH NOTIFICATION, AND FAILING SUCH, MOVED FOR THE DISMISSAL OF THE CONTEMPT MOTION."
 "THE TRIAL COURT ERRED BY PROCEEDING TO CONVERT THE APPELLEE'S MOTION FOR CONTEMPT TO ONE SEEKING A MODIFICATION OF SPOUSAL SUPPORT, OVER THE OBJECTION OF COUNSEL, WHERE THE DECREE OF DIVORCE ON ITS FACE, DID NOT RESERVE JURISDICTION TO MODIFY THE SPOUSAL SUPPORT."
 "THE TRIAL COURT ERRED BY REQUESTING THE APPELLANT IN OPEN DIALOGUE ON THE WITNESS STAND TO FORFEIT HIS RIGHTS UNDER THE SOCIAL SECURITY LAWS TO ELECT THE TIMING OF HIS SOCIAL SECURITY BENEFITS, UNDER CIRCUMSTANCES WHERE APPELLANT HAD PREVIOUSLY TESTIFIED UNDER OATH THAT HE DID NOT WISH TO TAKE AN EARLY RETIREMENT AT AGE 62, THE DECREE OF DIVORCE DID NOT REQUIRE HIM TO SEEK SOCIAL SECURITY BENEFITS AT AGE 62, AND THE COURT HAD FAILED TO FIRST RULE ON THE APPELLANT'S REQUEST FOR DISMISSAL OF CONTEMPT AND OBJECTIONS TO THE COURT'S JURISDICTION TO MODIFY SPOUSAL SUPPORT, OR TO ALLOW APPELLANT TO CONSULT WITH HIS LEGAL COUNSEL."
 "THE TRIAL COURT ERRED BY REFUSING TO SCHEDULE FOR REHEARING THE APPELLANT'S DULY FILED MOTION FOR REHEARING, AND TO DECIDE THE MOTION OF THE APPELLEE FOR CONTEMPT ON THE FACTS, THE LAW, AND THE DECREE OF DIVORCE."
 "THE TRIAL COURT BY SIGNING A JUDGMENT JOURNAL ENTRY REQUIRING APPELLANT TO FILE FOR SOCIAL SECURITY AFTER THE APPELLANT HAD FILED WITH THE COURT A MOTION IN WRITING, A MEMORANDUM OF LAW, AND AN AFFIDAVIT SPECIFICALLY STATING HIS REPUDIATION AND THAT HE DID NOT WISH TO FILE FOR SOCIAL SECURITY BENEFITS AT AGE 62."
Appellant argues that his due process rights were violated since he was never specifically given notice of what conduct was alleged to have constituted contempt. Appellant also contends that his in-court agreement to apply for Social Security immediately was involuntary since the court incorrectly informed him that he could be held in contempt and that the court could modify his spousal support obligation. Appellant states that once the court received his motion with the attached affidavit, it should not have filed the judgment entry which purported to contain an agreement by appellant to apply for early retirement and thus forego his federal right to full Social Security benefits. Appellee failed to file a brief in response.
 ANALYSIS
As aforementioned, appellant arrived at court to answer a "motion for contempt and other relief" filed by appellee which proceeded on the theory that appellant was collecting Social Security benefits without paying half to appellee. Appellant made clear at the hearing that he was not collecting Social Security benefits at age 62 because he wished to receive the increased benefits at age 65. Thus, appellee's allegations as contained in her motion were incorrect. The court then opined that this was not a matter of contempt but was a matter of spousal support modification. (Tr. 8-9). Later, the court said that it was mistaken when it thought that there were no grounds for contempt and informed the parties that contempt was an issue once again. (Tr. 16). After being asked by the court, appellant ended up agreeing to apply for Social Security out of the obvious confusion created by the court's repeated refraining of the issue. He later refused to sign the agreement and sought recission by the court who ignored his plea and nevertheless incorporated the agreement into a court order.
Admittedly, a settlement agreement entered in open court may be journalized by the court if its terms have been entered upon the record even if a party later refuses to sign the agreement.Kelley v. Kelley (1991), 76 Ohio App.3d 505, 509; Gulling v.Gulling (1990), 70 Ohio App.3d 410, 412. However, the agreement is only binding and enforceable if it was not obtained by fraud, duress, coercion, overreaching or undue influence. Gibson v.Meadow Gold Dairy (2000), 88 Ohio St.3d 201, 203; Walther v.Walther (1995), 102 Ohio App.3d 378, 383; Ellyson v. Ellyson
(June 11, 1993), Columbiana App. No. 92 C 32, unreported, 2. The Supreme Court has recognized that the proper procedure for disavowing an in-court agreement is to file a rescission motion prior to court journalization of the agreement. Spercel v.Sterling Indus., Inc. (1972), 31 Ohio St.2d 36, 40-41 (stating that an in-court agreement is binding and enforceable if it is entered into voluntarily).
In the case at bar, appellant timely sought rescission. See Id.
Thus, the question is whether appellant's agreement to apply for Social Security was voluntary. Prior to the filing of the judgment entry which purported to journalize the agreement, appellant informed the court by motion and affidavit that he felt compelled to agree due to the court's implicit threats to hold him in contempt and to increase his spousal support obligation. Since the court could have engaged in neither of these activities, we must conclude that appellant's in-court agreement was not knowingly or voluntarily entered and that his timely motion for a rehearing where he would profess his unwillingness to apply for early benefits should have been granted. Appellant's motion for a rehearing is arguably a motion for a new trial which should have been granted since there was an irregularity in the proceedings which prevented a fair trial and there was an error of law which occurred at the hearing and which was brought to the attention of the court. Civ.R. 59 (A)(1) and (9).
Initially, we focus our attention on the fact that the courtsua sponte converted the motion for contempt into a motion to modify spousal support (and then reinstated the contempt motion). Appellant objected on the grounds that the court had previously failed to reserve jurisdiction to modify spousal support. The prior divorce decree merely stated that the $50 per month award of spousal support would terminate if appellee died, remarried or became eligible for health insurance. Pursuant to R.C. 3105.18
(E) (1), a court has no jurisdiction to modify spousal support unless there exist changed circumstances and the divorce decree contains "a provision specifically authorizing the court to modify the amount or terms." A clause stating that spousal support shall terminate upon death or remarriage is not a reservation of jurisdiction to modify the amount or terms of spousal support based upon changed circumstances in general. Id.
Since the court failed to reserve jurisdiction to modify spousal support, appellant correctly argues that the court erroneously stated that it could treat the matter as one of spousal support modification.
We next note that we fail to see what conduct engaged in by appellant could be considered contemptuous. Contempt is defined as the disobedience of or resistance to a lawful court order. R.C. 2705.02(A). The failure to apply for Social Security cannot be characterized as contemptuous when there is no court order which instructs appellant to so apply. Neither a divorce decree that states that the parties shall divide equally all pension and Social Security benefits pursuant to a QDRO nor a QDRO which states that jurisdiction is reserved to equalize pension and Social Security gives notice to appellant that he is required to file for Social Security at age 62. Thus, the court incorrectly stated that the action below was properly proceeding as a contempt action. It seems clear that where a court implicitly threatens to sanction a defendant by means that are unavailable to the court, a settlement agreement made by the defendant after court persuading is not voluntary if the defendant so states prior to journalization of the agreement.
It also appears that the trial court could not directly and explicitly order appellant to apply for early retirement Social Security benefits as such benefits are not marital assets which can be divided by a state court. Hoyt v. Hoyt (1990), 53 Ohio St.3d 177,178, fn. 3. We recognize that the court reserved jurisdiction over the QDRO in order to effectuate its intent of equalizing pension and Social Security benefits. In order to avoid the issuance of an advisory opinion, we shall not voice our opinion on the proper method for effectuating the intent behind this clause. However, we will say that this reservation of jurisdiction does not permit the court to actually divide Social Security benefits. "State courts are prohibited from dividing Social Security benefits, which are allocated according to federal statute." Walker v. Walker (1996), 112 Ohio App.3d 90,92. The benefits may be considered by the court when it awards spousal support or divides marital property; however, the benefits themselves cannot be divided. See, e.g., Eickleberger v.Eickleberger (1994), 93 Ohio App.3d 221, 227; Smith v. Smith
(1993), 91 Ohio App.3d 248, 255. See, also, 42 U.S.C. 659 (a) and (I) (3) (A), (B) (ii) (where the United States government consents to garnishment of Social Security benefits for the payment of spousal support and explicitly states that such garnishment is not available for an equitable property distribution between spouses).
As such, appellant's agreement, made from the witness stand, without a chance to consult with counsel, during questioning by a court that had previously made erroneous statements regarding the available remedies, was not voluntary and should not have been journalized after receipt of his recission motion and affidavit.
For the foregoing reasons, this judgment of the trial court is reversed and this cause is remanded with orders to strike the judgment entry from the record which purports to journalize an in-court agreement. Judgment should be entered accordingly.
Cox, P.J., concurs, Donofrio, J., concurs.
 _________________________ JOSEPH J. VUKOVICH, JUDGE
[1] Note that appellant had previously, prior to the entry of the divorce decree, advised the court that such a decrease would occur. Note also that appellee is eligible for Social Security benefits when she turns 62 in late 2000.