OPINION
The appellant, George W. Imer, appeals a final entry of divorce from the Crawford County Court of Common Pleas. For the following reasons, we affirm the judgment of the trial court.
The parties, George W. Imer and Rhonda L. Imer, were married on September 16, 1995 in Gatlinburg, Tennessee. One child, Payton Lesley Imer, was born as issue of the marriage. The parties separated in October of 1998 and the appellee filed a Complaint for Divorce in the Crawford County Court of Common Pleas shortly thereafter.
During the pendency of the divorce, it was alleged that the appellant sexually abused his stepson, Joshua Byerly.[1] Although the appellant was indicted on criminal charges related to the allegations, the charges were ultimately dismissed. However, as a result of the charges, the appellant was denied visitation with his daughter for a period of time. Also, partially as a result of the criminal investigation, the appellant was suspended without pay from his position with the Plain Township Fire Department. The suspension lasted approximately from January 1, 1999 until June 24, 1999. During this time, the appellant filed for a reduction in the amount of his child and spousal support obligation based on change in income.
Some time after the criminal charges against the appellant were dropped, the Crawford County Children Services Board was advised that the parties' minor child, Payton, may have been sexually abused by the appellant. An investigation by the agency revealed insufficient evidence of abuse. However, the appellant was again denied access to his daughter.
The parties held a settlement hearing on May 25, 2000, wherein several issues were ostensibly resolved by the parties. Several other hearings were held before the case was resolved, including one on October 19 and 30, 2000, which mainly dealt with custody. The Magistrate issued her decision on January 10, 2001. The decision modified some of the terms of the parties' May 25 settlement agreement. In this Decision, the Magistrate also found that, although none of the filed shared parenting plans were in the child's best interest, shared parenting was advisable. The Magistrate gave the parties 30 days to file a modified plan that named the appellee as the residential parent for school purposes. The appellant filed objections to the Decision based solely on the shared parenting recommendation. On May 1, 2001, the trial court overruled the appellant's objections and adopted the Magistrate's Decision. The Magistrate entered another Decision on June 29, 2001, finding the Shared Parenting Plan submitted by the appellee on January 17, 2001, subject to certain modifications, to be in the child's best interest. The appellant filed no objections to that decision. Thus, on September 18, 2001, a final judgment entry of divorce which incorporated the June 29 decision was filed in this matter. The appellant now appeals, asserting three assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I
"The trial court erred in affirming the Magistrate's Decisions of January 10, 2001 and June 29, 2001 when the same contained errors in law and were facially defective as the Magistrate modified the terms of the parties' agreement without first finding that the agreement was other than mutually entered into or that the terms of the agreement were so unclear or ambiguous as to render the intent of the parties indiscernible and further exceeded the scope of her authority."
The appellant contends that the Magistrate's decisions improperly modified the terms the May 25, 2000 partial settlement agreement between the parties, and that, consequently, it was error for the trial court to adopt these decisions. Specifically, the appellant alleges that the magistrate modified the agreement with regards to payment of the guardian ad litem fee, the amount of the appellee's attorney fees that the appellant was obligated to pay, and the amount the appellant owed in back spousal support. We disagree with the appellant's argument.
It is axiomatic that a settlement agreement entered into in the presence of the court constitutes a binding contract.[2] Therefore, so long as it finds no fraud, duress, overreaching, or undue influence, a court may adopt a settlement as its judgment.[3] Furthermore, an oral settlement agreement may be enforced by the court, provided that its terms can be established by clear and convincing evidence.[4]
However, it is also well-settled that a trial court has discretionary authority to enforce in-court settlement agreements or to modify them out of equity.[5]
At the May 25, 2000 hearing, the parties entered into the following agreement with regard to the relevant issues on the record:
"[PLAINTIFF'S ATTORNEY]: * * * [I]t's my understanding, uhm, that there is a matter of $9,949.00 arrearages in alimony that are on the books pursuant to previous Court order. There's also the issue of attorney fees so far, that's been incurred to date, in the amount of $6,800.00 * * * that's due and owing by Plaintiff to uh, myself. There are also issues of $2,400.00 in Guardian Ad Litem fees which charge through four o'clock today.
"* * *
"[W]hen [the defendant] gets the back pay, is — it is paid to my office of which uh, all but $1,200.00 will be applied towards the back arrearages of $9,949.00 and CSEA will be ordered to give credit to Mr. Imer for that, $1,200.00 of which will then be applied towards uh, Mr. McBride's [Guardian Ad Litem] fees as and for George's share. Out of the other portion of the money that's paid to my office, even though its [sic] been re — uh, the arrearages are being reduced, $1,200.00 of that will also go to pay Mr. McBride's fees, i.e., Mr. McBride will be paid $1,200.00 by George's money and uh, Rhonda would pay $1,200.00 to the Guardian fees out of her arrearages. * * * * Alimony is to stop, but the arrearages on the temporary alimony that remains will be paid at a rate of $100.00 * * *.
"* * *
"[A]ll future alimony and attorney fees not mentioned * * * not mentioned before, are waived. Uh, each party will be responsible for their attorney fees, uh, other than what we talked about above."
After the agreement was recited into the record, each of the parties testified under oath that they understood its terms, agreed with it, and found it to be fair and equitable.
The Magistrate's January 10, 2001 decision adopted for the most part that parties' agreement. However, it concluded that the appellant should pay $12,160.00 of the appellee's attorney fees. The appellant filed objections to this decision only on shared parenting issues. On May 1, 2001, the trial court overruled those objections and adopted the magistrate's decision. Because issues, including the Shared Parenting Plan, remained to be resolved between the parties, this decision did not constitute a final divorce decree.
Additional hearings were held in the case and, on June 29, 2001, the magistrate issued another decision. In that decision, the magistrate reiterated her previous judgment regarding attorney fees and further recommended that the appellant pay 80% of the Guardian Ad Litem fees.
The final entry of divorce, issued on September 18, 2001, modified these terms as follows: (1) the appellee was ordered to pay 20% ($647.80) of the Guardian Ad Litem fees, while appellant was ordered to pay $2,591.20, representing 80% of the fees; (2) the appellant was ordered to pay the appellee's attorney fees in the amount of $12,160.00; (3) the appellant was deemed to owe $7,441.18 in spousal support arrearages. The appellant asserts that this last finding shows that spousal support continued beyond the date of the May 25, 2000 agreement that provided for cessation of the same.
We first note that the appellant failed to object below to any of the elements of the magistrate's decisions with which he now takes issue. "Ordinarily, reviewing courts do not consider questions not presented to the court whose judgment is sought to be reversed."[6] Thus, unless we find plain error, we must uphold the lower court's decision. Plain errors constitute any "errors or defects affecting substantial rights [and] may be noticed although they were not brought to the attention of the court."[7] Although the plain error doctrine is primarily applied in criminal cases, its application to civil cases may be necessary in "`extremely rare situations * * * to prevent a manifest miscarriage of justice * * *.'"[8]
Almost four months elapsed between the May 25 agreement and the final divorce decree. It is entirely reasonable that additional attorney fees accrued during that time period. Additionally, our calculations reveal that the amount of Guardian Ad Litem fees the appellant agreed to pay in the May 25 agreement equaled approximately 80% of the GAL fees to that date. Thus, the percentage of fees for which the appellant was responsible changed very little in the final decree. Finally, with regards to the spousal support, although the appellant claims that the audit provided by the Crawford County Child Support Enforcement Agency shows that his spousal support obligation was improperly continued beyond the May 25, 2000 agreement, the audit contains no specific dates regarding when the spousal support was assessed. All that is apparent to this Court is that the amount owed at the time of the final divorce decree was less than the amount estimated at the May 25, 2000 hearing. We find no abuse of discretion on the part of the trial court with regard to any of these issues.
Accordingly, the appellant's first assignment of error is not well-taken and is hereby denied.
 ASSIGNMENT OF ERROR NO. II
"The trial court erred in adopting as its Order a shared parenting plan when the evidence clearly established that the child's present environment presented a risk of harm to the child, particularly, when such decision was primarily based on the perceptions of the court that it would be speculative as to whether the father would honor any award of companionship to the mother."
For his next assignment of error, the appellant takes issue with the Shared Parenting Plan that was adopted by the trial court, which designates the appellee as the sole residential parent of the parties' minor child for school purposes. Based on the following, we disagree with the appellant.
A trial court's judgment "in custody matters enjoys a presumption of correctness."[9] Accordingly, a trial court has broad discretion when it decides the allocation of parental rights and responsibilities.[10]
A reviewing court may not reverse such decisions absent an abuse of discretion.[11] An abuse of discretion constitutes more than an error in law or judgment, rather it suggests that a trial court's action was arbitrary, unreasonable, or unconscionable.[12]
The appellant contends that the trial court abused its discretion in adopting the appellee's proposed shared parenting plan. He contends that the trial court should have designated him as the sole residential parent and legal custodian of the child.
The appellant advances basically two grounds for his objection. First, the appellant asserts that it was error for the trial court to opine that it was "speculative" whether the appellant would honor court-ordered visitation should he be designated the residential parent. The magistrate based this opinion, in part, upon the fact that the appellant was held in contempt during the pendancy of this action for failure to follow court orders. The magistrate also noted that the appellee, who was the child's primary care-giver during the divorce proceedings had a demonstrated parenting record, while the appellant did not. The appellant points us to the fact that his visitation with his daughter was interrupted for periods due to the allegations of sexual abuse lodged against him by the appellee.
The appellant also directs our attention to the appellee's relationship with Jeff Craighead, whom she dated for a period of time after the parties separated. Mr. Craighead had a criminal record of domestic violence and assault. He was also accused of "stalking" the appellee and causing substantial damage to her vehicle while she and the parties' minor child were inside it. Although the appellee repeatedly told the court and the Guardian Ad Litem that she stopped seeing Mr. Craighead, she admitted at the October 19, 2000 hearing that he spent the night at her home two weeks prior. At that time she again asserted that she planned to have no further contact with him and to keep him away from her children.
The magistrate thoroughly describes its basis for adopting this shared parenting plan throughout the extensive record in this case. Thus, while we agree with the appellant that the appellee has a far from perfect track record, we will not substitute our judgment for the well-reasoned decision of the trial court. We also note that although the plan designates the appellee as the residential parent for school purposes, it provides nearly equal visitation to the parties. The parental rights and responsibilities allotted therein are nearly fifty-fifty in every way. Accordingly, we find no abuse of discretion in the trial court's adoption of the shared parenting plan.
The appellant's second assignment of error is not well-taken and is hereby denied.
 ASSIGNMENT OF ERROR NO. II
"The trial court erred in denying the Appellant's request for a reduction in his spousal support and child support obligations when the Appellant was placed on suspension, without pay, due to pending criminal charges being filed against Appellant, particularly when those charges were dismissed."
The appellant's last assignment of error posits that he should have been granted a reduction in his spousal and child support obligations during the time when he was suspended without pay from his job with the Plain Township Fire Department.
A review of the record reveals that the trial court never entered a specific judgment denying the appellant's two motions for a reduction in his spousal and child support obligations. However, in its final decree of divorce, it ordered the appellant to pay all arrearages in the manner and amount of the original calculations. Thus, his motions were impliedly denied.
A trial court has broad discretion when determining both spousal support and child support awards.[13] Absent an abuse of that discretion, an appellate court will not disturb the trial court's judgment on appeal.[14]
Modification of child or spousal support is only appropriate when a "substantial" change in circumstances has occurred.[15] When the changed circumstance is a reduction in the payor's income, the court must not order modification "merely because a party no longer has as much income as he had when the original decree was entered."[16] Moreover, the reduction in income must not be brought on by the party seeking modification.[17] In addition, the court must also consider the earning capabilities, as well as the actual earnings of the party seeking modification.[18] The party seeking the modification has the burden of proving a changed circumstance justifying a change in the level of spousal or child support.[19]
The trial court addressed the appellant's motion in an April 23, 1999 judgment entry. Although the court did not expressly deny the motion at that time, it offered the following considerations against granting the motion. The court found that the appellant's suspension was brought about at least in part by his own acts of insubordination. Specifically, although the suspension was in part due to the pending criminal charges against the appellant, appellant's supervisor testified that it was also brought on by the appellant's failure to come to work, his leaving early from work, his refusal to cut his hair, and his insubordination. Also, the trial court noted that the appellant failed to aggressively seek other employment during his suspension. Finally, the court noted that the appellant may have been eligible to receive back-pay after his suspension ended, which would mean that the appellant's financial condition could be reinstated. Based on these considerations, the trial court did not abuse its discretion in denying the appellant's motions.
Accordingly, the appellant's final assignment of error is not well-taken and is hereby denied.
Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
Shaw, P.J., and Bryant, J., concur.
[1] Joshua is the appellee's son from a previous relationship.
[2] Walther v. Walther (1995), 102 Ohio App.3d 378, 383; citingSpercel v. Sterling Ind., Inc. (1972), 31 Ohio St.2d 36.
[3] Mack v. Polson Rubber Co. (1984), 14 Ohio St.3d 34, syllabus.
[4] Pawlowski v. Pawlowski (1992), 83 Ohio App.3d 794, 798-99.
[5] Kelley v. Kelley (1991), 76 Ohio App.3d 505, 509; Bourque v.Bourque (1986), 34 Ohio App.3d 284, 287.
[6] State ex rel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78,81, quoting Goldberg v. Industrial Comm. (1936), 131 Ohio St. 399,404.
[7] Crim.R. 52(B).
[8] O'Connell v. Chesapeake Ohio RR. Co. (1991), 58 Ohio St.3d 226,229-30.
[9] Butler v. Butler (1995), 107 Ohio App.3d 633, 638.
[10] Donovan v. Donovan (1996), 110 Ohio App.3d 615, 618.
[11] Id.
[12] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[13] Booth v. Booth (1989), 44 Ohio St.3d 142, 144 (child support);Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67 (spousal support).
[14] Kunkle, supra.
[15] See Leighner v. Leighter (1986), 33 Ohio App.3d 214, 215.
[16] Blunden v. Blunden (May 26, 1994), Cuyahoga App. No. 65595.
[17] Eitel v. Eitel (Aug. 30, 1994), Franklin App. No. 93APF-1745.
[18] Id.
[19] See Joseph v. Joseph (1997), 122 Ohio App.3d 734, 736.