DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment issued by the Lucas County Court of Common Pleas, Domestic Relations Division, in a post-divorce Civ.R. 60(B) motion for relief from judgment regarding the distribution of property included in a settlement agreement. Because we conclude that the trial court erred in granting the motion for relief from judgment, we reverse.
{¶ 2} Appellant, Rada A. El-Tatawy and appellee, Jo Ann H. El-Tatawy, were married in 1986, after entering into a pre-nuptial agreement. In June 1997, Rada filed for divorce and over the next 18 months the parties negotiated the terms of their divorce settlement. At trial, in January 1999, the parties read into the record an agreement on various items, including the division of marital assets and debts, child support and custody, and spousal support. As part of the property distribution, Jo Ann took the marital home, while Rada took his two business properties located on Detroit Avenue and Lagrange Street, Toledo, Ohio. On April 13, 1999, the final decree, a consent judgment entry signed by both parties and their counsel, was accepted by the trial court and filed.[1] The decree incorporated the terms of the January 1999 settlement agreement.
{¶ 3} On January 21, 2000, Jo Ann filed a Civ.R.60(B) motion for relief from judgment based upon newly discovered evidence which allegedly demonstrated that Rada had misrepresented the value of certain property referred to in the settlement agreement. Jo Ann based her motion on Rada's sale of the Lagrange property and inventory for $650,000 on June 9, 1999, less than two months after the divorce decree was filed. Rada opposed this motion and also filed a motion to show cause, alleging that Jo Ann was not complying with the visitation orders in the decree.[2]
On December 15, 2000, the court conducted a hearing on the Civ.R.60(B) motion and heard the following relevant evidence.
{¶ 4} Rada testified that he had operated a junkyard and parts business from a site first located on Detroit Avenue. As the city of Toledo had informed him that the property was not zoned for such a business, he purchased the nearby Lagrange property in February 1997, as a new site. Rada then operated from the Lagrange site which also contained an inventory of used and salvage vehicles, some of which were transported from his Detroit Avenue property. From the date he purchase the property until January 1999, the only improvements Rada made were some clean-up at the site and the addition of a gas furnace to the small office building. The county tax value for the Lagrange property, which consisted of two combined parcels, rose from $26,460 in 1997 to $58,280 in January 2000.
{¶ 5} During negotiations at the hearing in January1999, Rada agreed to waive his pre-nuptial agreement rights to the couple's residence so that property division and child custody issues could be more quickly settled and the divorce proceedings ended. He testified that he had valued the Lagrange property at $150,000 because he had made no significant improvements to this property and his business had been poor. Rada explained that the Lagrange property had not been up for sale, and that the purchaser, Billy Wild, had approached him at the site and asked about purchasing it. Since he was not really interested in selling, Rada said he impulsively asked for a high sale price, presuming that Wild would not accept. Rada testified that before then, he had never met Wild or had any reason to believe that anyone would pay more than his own purchase price for the property. Ultimately, the two men agreed on prices for the real estate and inventory, with the sale being completed on June 9, 1999.
{¶ 6} Billy Wild's deposition was also filed with the court as evidence. Wild first contacted Rada in mid-March 1999 about buying the property. The two parties signed purchase agreements for the real estate ($400,000) and for the inventory ($250,000) on March 29 and April 15, 1999, respectively. Wild, the owner of several successful scrap metal operations in Michigan, stated that he had been looking at real estate in the Toledo area in order to open a scrap metal business in Ohio. He became interested in Rada's property when other real estate was not available. Wild confirmed Rada's statement that when the offer to buy the Lagrange property was initiated, the parties did not know each other. Wild stated that commercial real estate normally sells for about $25,000 per acre. He testified that he was willing to pay the higher price for Rada's seven acres because it had a license which was required for his specialized use and plans for the site.
{¶ 7} Jo Ann testified at the motion hearing that she rejected the business properties as her part of the settlement because of the more than $360,000 debt and Environmental Protection Agency problems associated with them. She knew that the Lagrange property consisted of two parcels referred to as one address. Jo Ann also stated that, in light of the potential problems with the business properties, she opted to take the residential home and custody of the children. Jo Ann's attorney at the time of the divorce testified that she had attempted to have an appraisal of the business properties made, but was unable to find a qualified appraiser.
{¶ 8} The trial court determined that Jo Ann had failed to establish fraud or any grounds under Civ.R. 60(B)(2), (3) or (5), but found that there had been a mutual mistake of fact, i.e. that the parties had wrongly valued the property. Pursuant to Civ.R. 60(B)(1), the court then ordered the net proceeds from the June 1999 sale to be split evenly between the parties.
{¶ 9} Rada now appeals from that judgment, setting forth the following four assignments of error:
{¶ 10} "Assignment of Error No. 1
{¶ 11} "The trial court erred and abused its discretion when it granted relief pursuant to Civ.R. 60(B)(1) on June 26, 2002 premised on `mutual mistake' because a motion for relief based on Civ.R. 60(B)(1) was never filed, and the appellee's first suggestion that relief pursuant to Civ.R. 60(B)(1) was appropriate was set forth in the appellee's post hearing argument filed on January 19, 2002, long after the one year limitation for such motions set forth in Civ.R. 60(B).
{¶ 12} "Assignment of Error No. 2
{¶ 13} "The trial court erred and abused it's [sic] discretion when it did not deny the appellee's motion without hearing and determined that it was necessary and appropriate to conduct an evidentiary hearing with respect to the appellee's motion for relief from judgment pursuant to Civ.R. 60(B)(2), (3), and (5).
{¶ 14} "Assignment of Error No. 3
{¶ 15} "The trial court erred and abused it's [sic] discretion when it determined that the parties were operating under a mutual mistake of fact with respect to the value of the Lagrange property at the time they reached an agreement to settle and resolve their divorce on January 21, 1999, and granted the appellee relief from the consent judgment entry of divorce pursuant to Civ.R. 60(B)(1) as such determination was contrary to law and against the manifest weight of the evidence.
{¶ 16} "Assignment of Error No. 4
{¶ 17} "The trial court erred and abused it's [sic] discretion when it awarded the appellee a lump sum judgment of $275,687.00 rather than undertaking to conduct further proceedings to redistribute all of the marital assets and all of the marital liabilities of the parties, and to afford to the appellant the opportunity to pursue the enforcement of his rights under the terms of the pre-nuptial agreement of the parties, which rights the appellant had waived in reliance on the settlement entered into by the parties."
 I
{¶ 18} We will address Rada's first and second assignments of error together. He contends that the trial court erred in granting relief pursuant to Civ.R. (60)(B)(1) when it was not initially pled and in holding an evidentiary hearing as to Jo Ann's motion.
{¶ 19} To prevail on a motion brought pursuant to Civ.R. 60(B), " `the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken.' " Argo Plastic Prod. Co. v. Cleveland (1984), 15 Ohio St.3d 389,391, quoting GTE Automatic Elec. v. ARC Industries (1976),47 Ohio St.2d 146, paragraph two of the syllabus. Nothing in the rule requires a movant to specifically designate the particular section of Civ.R. 60(B) being argued.
{¶ 20} Where "* * * a motion for relief from judgment sets forth grounds which, if true, would justify such relief, the trial court should not overrule such motion without first affording an opportunity to the movant to present evidence in support of the motion." Matson v. Marks (1972), 32 Ohio App.2d 319, 327; see, also, Brenner v. Shore (1973),34 Ohio App.2d 209. If a movant fails to present any evidence in support of a motion for relief from judgment, that motion should be denied. See Associated Estates Corp. v. Fellows (1983), 11 Ohio App.3d 112, 116. If the movant files a motion for relief from judgment and it contains allegations of operative facts which would warrant relief under Civ.R. 60(B), the trial court should grant a hearing to take evidence and verify these facts before it rules on the motion. Adomeit v. Baltimore (1974),39 Ohio App.2d 97, 105. If a trial court intends to grant a motion to vacate on grounds other than those pled, it should conduct a hearing or provide the party opposing the motion the opportunity to respond to such grounds. See Stramm Contracting Co. v. Meador (Mar. 31, 1992), Portage App. No. 91-P-2333. Thus, a court may grant relief to a movant if he or she pleads operative facts in support of one of five grounds.
{¶ 21} In this case, before ruling on Jo Ann's motion, the trial court scheduled and held a hearing to verify the facts in the pleadings. Since the trial court was authorized, if not required, to conduct a hearing, its action was not improper. Furthermore, the facts upon which the trial court based its decision under Civ.R. 60(B)(1) were the same facts as those pertinent to the grounds initially stated by Jo Ann Since the parties had an opportunity to present evidence, the trial court did not err in selecting another basis from the five grounds listed in Civ.R. 60(B).
{¶ 22} Accordingly, Rada's first and second assignments of error are not well taken.
 II
{¶ 23} In appellant's third assignment of error, Rada argues that the trial court abused its discretion in granting Jo Ann's motion for relief from judgment. We agree.
{¶ 24} It is well-established that "a settlement agreement entered into between the parties in the presence of the court constitutes a binding contract * * *." Spercel v. Sterling Industries, Inc. (1972),31 Ohio St.2d 36, 40. The Supreme Court of Ohio has recognized that the "the doctrine of mutual mistake" may be a ground for the rescission of a contract if "there is a mutual mistake as to a material part of the contract and where the complaining party is not negligent in failing to discover the mistake. A mistake is material to a contract when it is `a mistake * * * as to a basic assumption on which the contract was made [that] has a material effect on the agreed exchange of performances.' 1 Restatement of the Law 2d, Contracts (1981), 385, Mistake, Section 152(1). Thus, the intention of the parties must have been frustrated by the mutual mistake." Reilley v. Richards (1994), 69 Ohio St.3d 352, 353.
{¶ 25} When a party seeking to repudiate an in-court settlement agreement files a motion to have it set aside, the trial court's authority to uphold or vacate such an agreement is discretionary. Spercel, supra; Kelley v. Kelley (1991), 76 Ohio App.3d 505, 509. Such a ruling will not be disturbed absent an abuse of discretion. Griffey v. Rajan (1987), 33 Ohio St.3d 75, 77. An abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
{¶ 26} In this case, the trial court determined that a mutual mistake had occurred because the parties had "significantly undervalued" the Lagrange property. The court also found that the parties were mistaken about the number of parcels involved and that the most recent sale of the property was the best indicator of its value. Our review of the record, however, fails to support these findings or to show that the intentions of the parties were frustrated.
{¶ 27} The evidence presented shows that at the time of the settlement agreement, the Lagrange property and Rada's other business properties were encumbered by not only a large amount of debt, but also by EPA clean-up issues. Aware of these problems, Jo Ann chose the family home and other property as her part of the property settlement. Jo Ann had the opportunity to have the property appraised, but, allegedly having difficulty in finding a commercial property appraiser, she abandoned this avenue for information. Notwithstanding the later sale of the property for a substantially higher amount, nothing in the record indicates that, at the time of the settlement, the property was worth more than its purchase price of $150,000. In addition, contrary to the court's finding, the parties were aware that the Lagrange property consisted of two parcels.
{¶ 28} In our view, in taking the property with its debt and EPA encumbrances, Rada bore the risk of a decrease as well as an increase in the value of the property. Based upon the evidence presented, nothing indicates that, at the time of the settlement, Rada was aware of any extraordinary rise in market potential for his junkyard. The trial court specifically found that no fraud existed and nothing in the record indicates fraud. It appears that Wild's specialized interest in purchasing this property at the price he did and when he did simply created an unforeseeable windfall for Rada.
{¶ 29} While the court may have believed an equal split of the net proceeds was an equitable result, there is no factual or legal support for the reopening of what was a final judgment. Where the value of property changes after a settlement agreement is entered into, the agreement should not be reopened merely on the basis of that change. See Block v. Block (Mar. 31, 1997), Franklin App. No. 96APF10-1296 (wife entitled to all shares from a stock split occurring after settlement agreement entered into; unforeseen or hidden value was likened to the "pregnant cow" purchase); Freeman v. Freeman (Dec. 16, 1997), Franklin App. Nos. 97APF05-706 and 97APF08-988 (equal division of retirement fund with stocks valued at time of divorce was not a guarantee against subsequent decrease in value of stocks or fund).[3]
{¶ 30} Here, the record does not show a mutual mistake of fact in valuation of the property at the time of the property settlement. Therefore, the court had no discretion to vacate the judgment and reopen the settlement on that basis and erred in granting Jo Ann's motion for relief from judgment. Accordingly, Rada's third assignment of error is well-taken. In light of our disposition of the third assignment of error, Rada's fourth assignment of error is now moot.
{¶ 31} The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division is reversed. The April 13, 1999 decree with its subsequent May 20, 1999 nunc pro tunc correction is reinstated. Court costs of this appeal are assessed to appellee.
 JUDGMENT REVERSED.
[1] On May 20, 1999, the trial court issued a nunc pro tunc judgment entry which corrected the April judgment entry by adding omitted language regarding certain issues involving the shared parenting plan.
[2] After investigation by a guardian ad litem and negotiation between the parties, the motion to show cause was dismissed.
[3] We also note that Rada's windfall was utilized to pay off the huge debt and purchase a home, which we presume will have positive effects on his ability to pay child support and provide for his children.