OPINION JUDGMENT ENTRY
{¶ 1} Appellant Ronald F. Stare appeals the decision of the Licking County Court of Common Pleas, Domestic Relations Division, regarding the division of his government retirement benefits. Appellee Nancy M. Stare is appellant's former spouse. The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant and appellee were married on June 5, 1969. All of the parties' children are emancipated. Both appellant and appellee are employees of the federal government. On March 15, 2002, appellant filed a divorce complaint in Licking County. Appellee answered and filed a counterclaim, and the matter was scheduled for trial on February 6, 2003.
 {¶ 3} On the eve of trial, the parties entered into a hand-written "Settlement Memorandum," which in part addressed the division of appellant's federal civil service retirement pension ("CSRS Pension"). Paragraph 13 of the Settlement Memorandum reads as follows:
 {¶ 4} "The CSRS of plaintiff shall be subject to QDRO, prepared by Pension Evaluators, with Defendant to receive 40% of the marital portion. Defendant is surviving spouse and receives her share of any COLA, spousal benefits, or other protections to insure that she shall receive her full 40% marital share, all to be prepared and included in the QDRO by Pension Eval. For purposes of QDRO — Marital dates are 6/5/69 — 1/1/03."
 {¶ 5} Appellee's counsel thereupon prepared a type-written proposed decree of divorce. However, as of May 15, 2003, the court had not obtained a finalized decree for filing. A status conference was therefore conducted before a magistrate. On May 21, 2003, the magistrate issued an order resolving concerns raised by appellant pertaining to certain proposed language in the decree. Although no motions to set aside the magistrate's order were ever filed, appellant and his then-counsel did not sign the proposed decree.[1] The trial court nevertheless signed the proposed decree and filed it on June 18, 2003.
 {¶ 6} Unfortunately, the parties hit another snag with the issue of the proposed Qualified Domestic Relations Order ("QDRO"). Appellant specifically objected to language in the QDRO to the effect that "should Former Spouse [appellee] predecease the Employee [appellant], then such benefits shall become payable to her estate."
 {¶ 7} The court set another status conference for November 18, 2003. No record was made of this proceeding, but it is undisputed that the conference consisted of oral arguments, and the court did not permit testimony. The court, in a four-page judgment entry filed November 20, 2003, held that the provision in the QDRO directing appellee's share of the CSRS pension go to her estate was appropriate. In the meantime, the QDRO was filed on December 16, 2003, without appellant's approval signature, and with his then-counsel indicating "approved as to form only."
 {¶ 8} Appellant timely appealed from the judgment entry filed November 20, 2003, and herein raises the following four Assignments of Error:
 {¶ 9} "I. The trial court committed reversible error when it failed to conduct an evidentiary hearing on the interpretation of the divorce decree and the qualified domestic relations orders submitted by plaintiff-appellant and defendant-appellee.
 {¶ 10} "II. The trial court exceeded it's (sic) jurisdiction when it modified the terms of the division of property when it found as journalized in its decision of November 20, 2003 that upon the death of the defendant-appellee that her portion of the plaintiff-appellant's csrs pension (civil service retirement pension) would revert to the estate of the defendant-appellee when that reversionary interest was not part of the parties' agreed judgment entry and decree of divorce and property settlement incorporated therein.
 {¶ 11} "III. The trial court misinterpreted the provisions of5 CFR 838.1012, 5 CFR 838.1003 and 5 CFR 838.1004 when in it's (sic) decision of November 20, 2003 it found that the parties' decree of divorce was not a `qualifying order' as that term is defined by 5 CFR 838.1012, 5 CFR 838.1003 and 5 CFR 838.1004 and, as such, the trial court erred and abused it's (sic) discretion when it allowed language to be included in the qdro that would permit defendant-appellee's share of plaintiff-appellant's retirement to revert to the estate of defendant-appellee if the defendant-appellee should predecease the plaintiff-appellant.
 {¶ 12} "IV. The trial court committed error when it approved the divorce decree which contained a provision that provided for the court to retain jurisdiction `with respect to the qdro to the extent required to maintain its qualified status and the original intent of the parties' when the parties' in court settlement memorandum did not contain said reservation of jurisdiction and, therefore, the court exceeded it's (sic) jurisdiction when it found in it's (sic) judgment entry journalized on November 20, 2003 that it had jurisdiction `to make further orders as are necessary to cause the domestic relations order to be qualified.'"
 I. {¶ 13} In his First Assignment of Error, appellant contends the trial court erred in failing to conduct an evidentiary hearing on the interpretation of the parties' decree and the proposed QDRO.[2] We agree.
 {¶ 14} In order to properly analyze this issue, we are initially compelled to address the status of the court's decree of divorce of June 18, 2003, as appellee in her brief notes at several points that appellant did not appeal therefrom. "* * * [A] clear majority of Ohio appellate courts have consistently held that divorce orders are not final and appealable if a QDRO has been ordered but not prepared." Keith v. Keith, Lucas App. No. L-04-1011, 2004-Ohio-1334, citing Procuniar v. Procuniar
(Sept. 8, 1995), Greene App. No 95-CA-19, and Scott v. Scott
(Feb. 8, 2000), Allen App. No. 1-99-79. The Sixth District Court of Appeals, in exploring this issue, has also held:
 {¶ 15} "We have found only one case, Wright v. Wright (Nov. 10, 1994), Hocking App. No. 94CA02, 1994 WL 649271, where an appellate court held that a divorce order was final and appealable despite the fact that no QDRO had been prepared and entered even though one was provided for in the judgment entry. * * * [Civ.R. 75(F)] clearly states that the property division in a divorce is essential to make the divorce final. Thus, we find that the reasoning in Wright is no longer pertinent, and we decline to follow it."
 {¶ 16} Rash v. Rash (2003), 155 Ohio App.3d 106, 109,2003-Ohio-5688.
 {¶ 17} We therefore likewise conclude that the decree in the case sub judice was not a final appealable order, as the parties' property division was not complete until the issuance of a COAP/QDRO, as is called for in the decree. It was therefore not outside the scope of the trial court's jurisdiction on the date of the November 2003 "hearing" to consider the parties' settlement agreement, as appellee suggests in her response brief.
 {¶ 18} We thus return to the question of whether appellant was entitled to an evidentiary hearing to interpret the decree and QDRO. In Hileman v. Hileman (July 26, 1999), Stark App. Nos. 1998CA00256, 1998CA00257, an appellant maintained that various provisions in his divorce decree were not contained in the in-court settlement agreement reached with his former spouse. We held: "Case law clearly provides that a trial court has discretionary authority to enforce in-court settlement agreements or to modify them out of equity. Kelley v. Kelley (1991),76 Ohio App.3d 505, 509, 602 N.E.2d 400; Bourque v. Bourque
(1986), 34 Ohio App.3d 284, 287, 518 N.E.2d 49; and R.C.3105.011. `However, when a party later disputes the terms of the agreement, the trial court should hold an evidentiary hearing to resolve any dispute about the existence of an agreement or its terms.' Waddell v. Waddell (Dec. 16, 1996), Butler App. No. CA96-03-056 * * *."
 {¶ 19} In the case sub judice, the trial court declined to allow evidence at the hearing on November 18, 2003. Instead, the court first looked at the language of 5 CFR 838.1012, which states: "Unless the qualifying court order expressly provides otherwise, the former spouse's share of employee retirement benefits terminates on the last day of the month before the death of the former spouse, and the former spouse's share of employee retirement reverts to the retiree." The court thereupon concluded that appellant could not rely upon 5 CFR 838.1012 to interpret the decree, because said regulation only referenced "qualifying court orders," i.e., a COAP or QDRO. Judgment Entry at 2. Since the disputed QDRO in this case indeed expressed that the CSRS pension would not revert to the retiree [appellant], the court turned to Ohio law to gauge the validity of this non-reverter clause. The court drew from a sentence in the decree which addressed "secur[ing] Defendant's [appellee's] ownership right in the assigned portion of Plaintiff's retirement benefits under the Plan * * *" (see Divorce Decree at 4, captioned "Preretirement Survivorship Protection for Defendant"). Accordingly, the court found that appellee's "ownership" rights per the aforesaid sentence in the decree meant that she could dispose of her share of the CSRS pension at her discretion upon death. Judgment Entry, Nov. 20, 2003, at 3.
 {¶ 20} Upon review, however, we are not satisfied that these issues were properly addressed without an evidentiary hearing.Hileman, supra. The parties may have intended that a mutually agreeable QDRO would fill in any gaps or ambiguities as to the technicalities of reverter should appellee predecease appellant.[3] See Bush v. Bush, Butler App. No. CA2002-05-131, 2003-Ohio-2781. We therefore hold that the critical question in this case, i.e., whether the QDRO that was ultimately issued matched the parties' settlement terms, demands an evidentiary hearing under these circumstances.
 {¶ 21} Appellant's First Assignment of Error is therefore sustained.
 II., III., IV. {¶ 22} Based on the foregoing, we find the issues raised in appellant's Second, Third, and Fourth Assignments of Error are not ripe for consideration.
 {¶ 23} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Domestic Relations Division, Licking County, Ohio, is hereby reversed and remanded for further proceedings consistent with this opinion.
Wise, P.J., Edwards, J., and Boggins, J., concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Domestic Relations Division, Licking County, Ohio, is reversed and remanded for further proceedings consistent with this opinion.
Costs to appellee.
[1] The proposed decree indicates appellant "failed" to sign and his counsel "refused" to sign.
[2] We will utilize the term "QDRO" in this opinion to maintain consistency with the record, even though "Court Order Acceptable for Processing" (COAP") is probably the better term in the realm of federal government pensions. See, e.g., 5 CFR 838.222.
[3] The following provision in the decree is further suggestive that the QDRO was meant to fill in certain gaps: "ImportantNote: In the event that the Plan does not permit Defendant to receive her benefits in the form of an actuarially equivalent life annuity based on her life expectancy, then the form of benefits payable to Defendant shall be based on the life expectancy of Plaintiff, and Plaintiff shall be required to elect his benefits in the form of a reduced 50 percent joint and survivor annuity in order to provide Defendant with postretirement survivorship protection." Divorce Decree at 4.