**DOERFLER (n.k.a. Barber), Appellee,**

v.

**DOERFLER, Appellant.**

[Cite as *Doerfler v. Doerfler,* 162 Ohio App.3d 585, 2005-Ohio-4066.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 04AP–1337.

Decided Aug. 9, 2005.

Eugene F. Battisti Jr., and Tracy Q. Wendt, for appellee.

Tyack, Blackmore & Liston Co., L.P.A., and Thomas M. Tyack, for appellant.

McGRATH, Judge.

{¶ 1} Defendant-appellant, Roger N. Doerfler appeals from the qualified domestic relations order ("QDRO") entered in the Franklin County Court of Common Pleas, Division of Domestic Relations, on November 17, 2004.

{¶ 2} Appellant and Melissa M. Doerfler, appellee were married on October 9, 1971. The parties were divorced pursuant to a divorce decree filed on October 26, 1987. Paragraph 12 of the divorce decree addressed the division of appellant's retirement interest in the Central States Southeast and Southwest Areas Pension Fund, stating:

> *Retirement* : The parties further agree that they shall equally divide the Defendant's present vested interest in his Central States Southeast and Southwest Areas Pension Fund via a Qualified Domestic Relations Order. The parties shall further cooperate and do all things necessary to accomplish the preparation of this Qualified Domestic Relations Order. The parties further agree that the Qualified Domestic Relations Order shall remain subject to the continuing jurisdiction of the Court.

{¶ 3} Thereafter, the parties submitted a QDRO, which was signed by both parties and their counsel, to the pension fund. The QDRO provided that the plan administrator would segregate as a separate account 50 percent of the appellant's vested account balance as of October 23, 1987. However, via a letter sent to Harry Lewis, appellee's counsel of record in 1988, the pension fund rejected the QDRO.[1] Thus, a QDRO was never filed.

---

1. It appears that the QDRO was disapproved because it was not in compliance with the pension fund's requirements. For example, one of the stated reasons for rejection was that the pension fund was unable to segregate accounts.

{¶ 4} In 2003, current counsel for appellee submitted another proposed QDRO to the pension fund, which utilized the "coverture approach" to determine the amount of appellee's benefit. The coverture approach utilizes the coverture fraction, which consists of the number of years of service earned by the participant during the marriage divided by the number of the participant's total years of service. In the QDRO submitted by appellee and approved by the court, the coverture fraction is applied to the retirement benefits as of the participant's commencement date, or the appellee's commencement date, whichever is earlier. The pension fund indicated that the QDRO submitted by appellee would qualify.

{¶ 5} Appellant's counsel advised appellee that he disputed the QDRO and the method used to determine appellee's benefit. Appellant contends that the coverture method as used in appellee's QDRO does not comply with the terms of the divorce decree, because the divorce decree states that appellee is entitled only to the "present vested interest" as it was at the time the parties entered into the divorce decree, not the "present vested interest" as it will be at the time benefits will commence. In other words, appellant argues that the use of the coverture approach in this instance is inappropriate because it provides for appellee's receiving a higher portion of benefits than was contemplated by the parties when they entered into the separation agreement. Appellant contends that the parties' intent at the time of the divorce decree—that appellee would be entitled only to the vested interest as of 1987—is evident by the 1988 QDRO, which the parties agreed to and which specifically stated appellee's interest as the balance of participant's account as of October 23, 1987.

{¶ 6} Because the parties could not agree on a QDRO to submit to the court, appellee filed a motion with the Franklin County Court of Common Pleas, Division of Domestic Relations, to invoke the continuing jurisdiction of the court. In this motion, appellee expressed the need for an evidentiary hearing because the "court intends to rely on a proposed Order which most closely reflects the intentions of the parties as set forth in provision # 12 located on page # 8 of the parties' Agreed Judgment Entry–Decree of Divorce." The motion further stated that "[e]ach of the parties' legal counsel further agrees that an evidentiary hearing is necessary in order to present the plausible positions of Plaintiff and Defendant to the Court for ultimate determination as to which proposed Qualified Domestic Relations Order actually contains the terms and provisions which most closely align to the intentions of the parties at the time they entered into the Agreed Judgment Entry–Decree of Divorce." In essence, both parties requested a hearing so that the court could determine the meaning of "present vested interest" as it is used in the divorce decree.

{¶ 7} Although a hearing was scheduled for November 17, 2004, it appears from the record that a hearing was not held, nor was any evidence taken. The

court adopted appellee's version of the QDRO, and, thereafter, appellee withdrew her request for a hearing. It is from this order that appellant appeals.

{¶ 8} Appellant raises the following two assignments of error:

Assignment of error number I.

I. The trial court erred in approving the plaintiff's QDRO in 2004 without conducting a hearing as to whether its terms complied with the terms mandated by the divorce decree filed September 15, 1987.

Assignment of error number II.

II. The QDRO filed by the court November 2004 is erroneous and prejudicial to defendant as it awards benefits to plaintiff earned by defendant after the termination of the marriage September 15, 1987.

{¶ 9} A trial court has broad discretion in distributing marital property, including a pension benefit. *Ricketts v. Ricketts* (1996), 109 Ohio App.3d 746, 673 N.E.2d 156. Once marital property is divided, the division is not subject to later modification. See R.C. 3105.171; *Haller v. Haller* (Mar. 18, 1996), Warren App. No. CA95–06–063, 1996 WL 116140. A party is not entitled to modification of an agreement simply because he or she has made a bad bargain. *George v. George* (Sept. 23, 1998), Summit App. No. 18866, 1998 WL 663221, citing *Proctor v. Proctor* (1997), 122 Ohio App.3d 56, 701 N.E.2d 36. Rather, a court must determine the original intent of the parties, as evidenced by the contractual agreement. If there is any ambiguity, the trial court has the right to resolve confusion of a separation agreement. *Bond v. Bond* (1990), 69 Ohio App.3d 225, 590 N.E.2d 348. However, when a party disputes the terms of the agreement, the trial court should hold an evidentiary hearing to resolve any dispute about the existence of an agreement or its terms. *Stare v. Stare*, Licking App. No. 03 CA 109, 2004-Ohio-4770, 2004 WL 2004152.

{¶ 10} The facts surrounding the *Stare* case are similar to those currently before this court. The parties in *Stare* divorced in 1969, and their settlement memorandum provided that wife shall receive "40% marital share, all to be prepared and included in the QDRO by Pension Eval. For purposes of QDRO—Marital dates are 6/5/69–1/1/03." Id. at ¶ 4. The parties could not agree on survivorship language in the QDRO. After a status conference consisting of oral arguments but with no record being prepared, the trial court issued a four-page judgment entry holding that the wife's desired survivorship language was appropriate. One of the assignments of error raised on appeal was that the trial court erred in failing to hold an evidentiary hearing on the interpretation of the divorce decree and the QDROs submitted by the parties. The court agreed and found that the issue was not properly addressed without an evidentiary hearing and that the critical question in the case—i.e., whether the QDRO that was ultimately

issued matched the parties' settlement terms, demanded an evidentiary hearing under the circumstances. Id. at ¶ 20.

{¶ 11} Here, not only is there no evidence via affidavit, testimony, or otherwise in the record, there is no analysis from the trial court. It appears from the limited record before us that the trial court chose appellee's version of the QDRO simply because it had been preapproved by the pension fund.[2] However, the issue of preapproval by the pension fund is irrelevant at this juncture, as the issue before the court is whether or not the QDRO is in accordance with the specific language of the divorce decree. If the QDRO does not comply with the divorce decree, then it matters not that it was preapproved by the pension fund.

{¶ 12} The crux of appellant's argument is that the coverture method, as used in the QDRO, is not in compliance with the parties' divorce decree. In deciding similar issues, courts have held that if there is a date certain or language suggesting that the coverture method is not appropriate, then benefits should be calculated according to the benefits as they existed at the time of the divorce because to do otherwise constitutes a modification of the divorce decree itself. See *George*, Summit App. No. 18866, 1998 WL 663221; *Cox v. Cox* (Feb. 1, 1999), Warren App. No. CA98–04–045 and CA98–05–054, 1999 WL 58098; *Pohl v. Pohl*, Montgomery App. No. 20001, 2004-Ohio-3790, 2004 WL 1588110. However, some Ohio courts have held that divorce decrees similar to the one at issue here anticipated the retirement benefit to be received in the future; thus, the value as of the benefits' commencement date would be used. See *Hille v. Hille*, Lucas App. No. L–03–1211, 2004 WL 1088412. However, without any evidence as to what the parties intended at the time they entered into the agreement, and without any analysis from the trial court on this issue, we are unable to conduct a meaningful review of the trial court's order. As stated earlier, it appears to us that the trial court selected appellee's version of the QDRO because it had been preapproved by the pension fund. But this approval fails to address the threshold issue, which is whether or not the QDRO complies with the terms of the divorce decree. Therefore, we find that the trial court abused its discretion and erred in failing to hold an evidentiary hearing in this case. See *Stare*, 2004-Ohio-4770, 2004 WL 2004152; see, also, *Franchini v. Franchini*, Geauga App. No. 2002–G–2467, 2003-Ohio-6233, 2003 WL 22763520; *Tabor v. Tabor*, Mahoning App. No. 02 CA 73, 2003-Ohio-1432, 2003 WL 1466277.

{¶ 13} Accordingly, we sustain appellant's first assignment of error.

{¶ 14} Because we sustain appellant's first assignment of error, appellant's second assignment of error is rendered moot.

---

2. The fact that appellant failed to submit a preapproved QDRO is also emphasized by appellee in her argument on appeal.

{¶ 15} For the foregoing reasons, we sustain appellant's first assignment of error and reverse the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, and remand this matter to the trial court for adjudication in accordance with this decision.

Judgment reversed
and cause remanded.

FRENCH and KLATT, JJ., concur.