[Cite as *Hulse v. Hulse*, 2014-Ohio-1106.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## GREENE COUNTY

GLENN HULSE

       Plaintiff-Appellant

v.

KAREN HULSE

       Defendant-Appellee

Appellate Case No.    2013-CA-30

Trial Court Case No.   1997-DR-550

(Civil Appeal from Common Pleas Court-
 Domestic Relations)

. . . . . . . . . . .

# O P I N I O N

Rendered on the 21st day of March, 2014.

. . . . . . . . . . .

RICHARD HEMPFLING, Atty. Reg. No. 0029986, 15 West Fourth Street, Suite 100, Dayton, Ohio 45402
     Attorney for Plaintiff-Appellant

PATRICIA N. CAMPBELL, Atty. Reg. No. 0068662, 90 East Franklin Street, Bellbrook, Ohio 45305
     Attorney for Defendant-Appellee

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    Plaintiff-appellant, Glenn Hulse, appeals from a decision and order of the Greene County Court of Common Pleas, Domestic Relations Division, clarifying the division of his military retirement benefits with his ex-wife, defendant-appellee, Karen Hulse.  For the reasons outlined below, we affirm the judgment of the trial court.

### Facts and Course of Proceedings

{¶ 2}    Glenn and Karen Hulse were married on May 28, 1984.  On December 24, 1997, Glenn and Karen[1] obtained a final decree of divorce in the Greene County Court of Common Pleas, Domestic Relations Division.  Incorporated with the decree was a Separation Agreement, as well as an Amendment to the Separation Agreement, which addressed the division of retirement benefits.  The Amendment to the Separation Agreement was prepared by Glenn's counsel and was signed by both parties.   The entire Amendment states as follows:

It is the agreement of the PARTIES that the portion of the retirement benefits of the PARTIES which were earned during this marriage are a joint marital asset.   It is therefore the agreement of the PARTIES that they will equally divide the portion of the retirement benefits earned during this marriage, when the benefits are received.

The measure of each PARTIES' interest in the retirement benefits accrued by the other party shall be the number of years of marriage divided by the eventual number of years of retirement benefit accrual times one-half.

{¶ 3}    At the time of the divorce, Glenn had been employed by the U.S. Air Force since

---

[1]  For purposes of convenience, we will refer to the parties by their first names.

October 1, 1981. Glenn retired on September 30, 2004, over six years after his divorce from Karen became final. In 2009, Karen filed a motion for an order requiring Glenn to provide information for and to execute a Qualified Domestic Relations Order regarding the division of his retirement benefits. Karen also filed a motion to modify the divorce decree. In 2010, Karen dismissed both of these motions.

{¶ 4} However, on September 17, 2012, Karen filed a Military Qualifying Order (MQO), which stated, in part, that she was entitled to receive a coverture fraction interest in Glenn's gross retirement pay. Shortly after the MQO was filed, Glenn filed a motion to vacate the MQO on grounds that it was not preceded by a motion and notice as required by Civ.R. 75(J). Glenn also filed a notice of appeal from the MQO and a motion for remand so that the trial court could rule on his pending motion to vacate. In Greene County Appellate Case No. 2012-CA-0062, this court granted Glenn's motion for remand.

{¶ 5} On remand, the trial court held a hearing on Glenn's motion to vacate. During the hearing, Karen agreed to vacate the MQO. Following the hearing, each of the parties filed a motion requesting the trial court to clarify how the retirement benefits should be divided per the language in the Amendment to the Separation Agreement.

{¶ 6} Karen's motion for clarification advocated for a strict coverture formula in which her interest in Glenn's retirement benefits was based on the following fraction: "one half the total number of months or portions thereof that the parties were both married and [Glenn] participated in the Plan (162 [months]) over the total number of months or portions thereof Glenn participated in the Plan (276 months)." Motion for Clarifying Order (Jan. 25, 2013), Green County Common Pleas Court, Domestic Relations Division Case No. 97 DR 0550, Docket No. 207, p. 2, ¶ 2. She

also advocated for a proportionate share of any post-retirement cost of living adjustments made to Glenn's retirement benefits on or after the date of the court's clarifying order.

{¶ 7}   On the other hand, Glenn's motion for clarifying order advocated for a hypothetical award formula wherein Karen would only be entitled to one-half of the marital portion of Glenn's retirement benefits, which would be calculated as if he had retired on the day of their divorce.   Based on this formula, Karen would not receive the benefit of Glenn's pay increases that occurred after the divorce.

{¶ 8}   At the hearing on the motions to clarify, the trial court indicated that the language in the Amendment was clear and unambiguous, and therefore, it did not allow the parties to testify regarding their intent when they signed the Amendment.   In its decision and order, the trial court stated that the first paragraph of the Amendment was simply a general statement indicating that the parties agreed Karen was entitled to her marital portion of Glenn's retirement benefits.   The trial court also stated that the second paragraph provided the specific formula the parties agreed to use for dividing the benefits.   According to the trial court, the second paragraph indicated that the retirement benefits were to be divided pursuant to the coverture formula advocated by Karen, which entitled her to 29.4% of Glenn's gross monthly retirement pay. Finally, the trial court found that the divorce decree was silent as to the treatment of cost of living adjustments, and as a result, Karen was entitled to any cost of living adjustments that were made since Glenn retired and any granted in the future.

{¶ 9}   Glenn now appeals from the trial court's decision clarifying the division of his retirement benefits, raising one assignment of error.

**Assignment of Error**

{¶ 10}   Glenn's sole assignment of error is as follows:

THE TRIAL COURT ERRED IN AWARDING APPELLEE A STRICT COVERTURE FRACTION OF APPELANT'S CURRENT AND FUTURE GROSS MONTHLY RETIREMENT BENEFITS.

{¶ 11}   Under his sole assignment of error, Glenn argues that the trial court incorrectly interpreted the language in the Amendment to the Separation Agreement.   Glenn contends that the language in the Amendment's first paragraph unambiguously provides that Karen is only entitled to half of the retirement benefits earned during their marriage.   In other words, he claims that   Karen can only share in the amount of retirement benefits that he would have hypothetically received if he had retired on the date of their divorce.   Alternatively, Glenn argues that the Amendment's second paragraph, which provides for the use of a coverture formula in calculating Karen's share of the benefits, renders the first paragraph ambiguous.   As a result of the alleged ambiguity, Glenn claims that the trial court erred in failing to permit the parties to testify regarding their intent when they signed the Amendment.

{¶ 12}   As a preliminary matter, we note that it is well established that "[p]ension or retirement benefits accumulated during the course of the marriage are marital assets subject to property division in a divorce action." (Citations omitted.)  *Erb v. Erb*, 75 Ohio St.3d 18, 20, 661 N.E.2d 175 (1996).  Regarding the division of pension or retirement benefits, "[t]he trial court must have the flexibility to make an equitable decision based upon the circumstances of the case, the status of the parties, the nature, terms, and conditions of the pension plan, and the reasonableness of the result."  *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 180, 559 N.E.2d 1292 (1990).

**{¶ 13}**   In *Hoyt*, the Supreme Court of Ohio established guidelines for trial courts to follow when exercising their discretion to award pension or retirement benefits and stated that:

> When considering a fair and equitable distribution of pension or retirement benefits in a divorce, the trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result.
>
> The trial court should attempt to preserve the pension or retirement asset in order that each party can procure the most benefit, and should attempt to disentangle the parties' economic partnership so as to create a conclusion and finality to their marriage.   *Id*. at paragraphs one and two of the syllabus.

**{¶ 14}**   Therefore, "[t]he trial court has broad discretion to divide property in domestic relations cases, and its decision will not be disrupted on appeal absent unreasonable, arbitrary, or unconscionable conduct."   *Schetter v. Schetter*, 2d Dist. Clark No. 2010 CA 35, 2011-Ohio-246, ¶ 15, citing *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401, 696 N.E.2d 575 (1998).   (Other citations omitted.)   " 'If there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion.' "   *Id*., quoting *Middendorf* at 401.

**{¶ 15}**   The divorce decree in this case incorporates a Separation Agreement and an Amendment to the Separation Agreement with respect to retirement benefits, which both parties agreed to and signed.   "Agreements incorporated into divorce decrees are contracts and are subject to the rules of construction governing other contracts."   (Citation omitted.)   *Majeski v. Majeski*, 2d Dist. Montgomery No. 24668, 2012-Ohio-731, ¶ 13.   "Typically, we review contractual questions *de novo*, except where the contract is ambiguous. * * * The trial court has

broad discretion to clarify ambiguities, but whether a contract is ambiguous is a decision that is made as a matter of law." (Citation omitted.) *Id*.

{¶ 16} " 'The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement. * * * A court will resort to extrinsic evidence in its effort to give effect to the parties' intentions only where the language is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning.' " *Jackson v. Hendrickson*, 2d Dist. Montgomery No. 20866, 2005-Ohio-5231, ¶ 23, quoting *Kelly v. Medical Life Ins. Co.*, 31 Ohio St.3d 130, 132, 509 N.E.2d 411 (1987). Therefore, "[i]f an ambiguity does not exist, the trial court 'may not construe, clarify or interpret the parties' agreement to mean anything outside of that which it specifically states.' " *Schetter* at ¶ 17, quoting *Pavlich v. Pavlich*, 9th Dist. Summit No. 22357, 2005-Ohio-3305, ¶ 7.

{¶ 17} "[C]ourts have held that if there is a date certain or language suggesting that the coverture method is not appropriate, then benefits should be calculated according to the benefits as they existed at the time of the divorce because to do otherwise constitutes a modification of the divorce decree itself." (Citations omitted.) *Doerfler v. Doerfler*, 162 Ohio App. 3d 585, 2005-Ohio-4066, 834 N.E.2d 388, ¶ 12 (10th Dist.).

{¶ 18} In this case, the language in the Amendment does not set forth a hypothetical date certain from which to calculate. Instead, the first paragraph of the Amendment provides, in part, that: "It is therefore the agreement of the PARTIES that they will equally divide the portion of the retirement benefits earned during this marriage, *when the benefits are received*." (Emphasis added.) The phrase "when the benefits are received" indicates that the parties agreed that the

benefits would be subject to division as of Glenn's retirement, not on some other hypothetical date. Accordingly, the language in the first paragraph of the Amendment does not indicate that the parties intended to use the hypothetical award formula from the date of divorce as advocated by Glenn.

{¶ 19} Furthermore, just as the trial court found, the language in the second paragraph of the Amendment clearly and unambiguously provides that a coverture formula is to be used when dividing the retirement benefits. A coverture formula " 'takes the total years of marriage divided by the total years of [the former spouse's] service. Under this method, [the recipient spouse] receives half of the coverture fraction multiplied by the value of the pension' at the time of retirement." *Benfield v. Benfield*, 2d Dist. Montgomery No. 19363, 2003-Ohio-5968, ¶ 7, fn.1, quoting *Cox v. Cox*, 12th Dist. Warren Nos. CA98-04-045, CA98-05-054, 1999 WL 58098, * 1 (Feb. 1, 1999).

{¶ 20} As noted earlier, the second paragraph of the Amendment in this case states that: "The measure of each PARTIES' interest in the retirement benefits accrued by the other party shall be the number of years of marriage divided by the eventual number of years of retirement benefit accrual times one-half." That the parties specifically chose and agreed to this coverture formula language clearly indicates that they did not intend to implement the hypothetical award formula. Moreover, the phrase "eventual number of years of retirement" also indicates that a hypothetical date was not intended to be used, but rather the date of Glenn's retirement.

{¶ 21} Additionally, we note that Glenn relies on *Schetter*, 2d Dist. Clark No. 2010 CA 35, 2011-Ohio-246, in support of applying the hypothetical award formula from the date of divorce. In *Schetter*, this court concluded that a wife's interest in her husband's retirement

benefits was restricted "to the value of the pension funds as they existed on the date of the termination of the marriage." *Id*. at ¶ 27. This conclusion was based on the language in the divorce decree and two contemporaneously filed Court Orders Acceptable for Processing (COAPs) which stated that the wife was " 'awarded a one-half (50%) interest in [the husband's retirement benefits] earned by [the husband] during the marriage of the parties.' " and that the " 'marital portion' " of the husband's retirement benefits is to be determined " 'as of the date of dissolution of marriage.' " *Id*. at ¶ 3-4. Moreover, the COAPs expressly stated that the wife " 'shall have no interest * * * nor creditable service' " in the husband's retirement pensions " 'after the date of dissolution of marriage.' " *Id*. at ¶ 4.

{¶ 22} The language in *Schetter* is in stark contrast to the language at issue here. As noted earlier, the Amendment language does not evidence any intent by the parties to restrict Karen's interest in Glenn's retirement benefits to the value of the retirement fund as of the date of their divorce. Accordingly, Glenn's reliance on *Schetter* is misplaced.

{¶ 23} Because the language in the Amendment in this case is clear and both paragraphs of the Amendment do not call for applying the hypothetical award formula, no ambiguity exists and the trial court did not err in prohibiting the parties from testifying regarding their intent and understanding when they signed the Amendment. *See e.g., Jackson*, 2d Dist. Montgomery No. 20866, 2005-Ohio-5231 at ¶ 24 (finding that because the divorce decree was unambiguous "there is no reason to inquire into the parties' intent"). Furthermore, we find no error in the trial court's decision finding that the first paragraph of the Amendment was a general statement of the parties' agreement and the second paragraph provided the specific formula for dividing the retirement benefits. Accordingly, we conclude that the Amendment clearly and unambiguously provides

for the use of the coverture formula.

**{¶ 24}**   Glenn's sole assignment of error is overruled.

## Conclusion

**{¶ 25}**   Having overruled Appellant Glenn Hulse's sole assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FAIN and HALL, JJ.,   concur.

Copies mailed to:

Richard Hempfling
Patricia N. Campbell
Hon. Steven L. Hurley