[Cite as *Gudorf Law Group, L.L.C. v. Brannon*, 2019-Ohio-3529.]


**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| GUDORF LAW GROUP, LLC | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 27883 |
| | : | |
| v. | : | Trial Court Case No. 2016-CV-2688 |
| | : | |
| DAVID BRANNON | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of August, 2019.

. . . . . . . . . .

RICHARD HEMPFLING, Atty. Reg. No. 0029986, 15 West Fourth Street, Suite 100, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellant

MATTHEW C. SCHULTZ, Atty. Reg. No. 0080142 and DAVID D. BRANNON, Atty. Reg. No. 0079755, 130 West Second Street, Suite 900, Dayton, Ohio 45402
        Attorneys for Defendant-Appellee

. . . . . . . . . . . .

HALL, J.

{¶ 1} The Gudorf Law Group, LLC ("Gudorf") appeals from the trial court's decision and judgment entry denying defendant-appellee David Brannon's motion for sanctions and overruling Gudorf's motion for reconsideration of a prior summary judgment decision in Brannon's favor.

{¶ 2} In its two assignments of error, Gudorf does not challenge the trial court's ruling on Brannon's sanctions motion. Rather, in its first assignment of error, Gudorf challenges the trial court's earlier entry of summary judgment in favor of Brannon on Gudorf's complaint. In its second assignment of error, Gudorf challenges the trial court's overruling of its motion for reconsideration of that summary judgment decision.

{¶ 3} The record reflects that Gudorf filed the underlying case against Brannon in May 2015, alleging seven claims arising out of the parties' employment relationship. The claims involved Brannon's terminating his employment with Gudorf and taking a client with him to his new employer, Brannon & Associates. After leaving Gudorf, Brannon obtained a favorable settlement for his client and earned a substantial fee. In its lawsuit, Gudorf asserted a right to be compensated for the departed client. Brannon filed counterclaims in June 2016. Both parties moved for summary judgment on Gudorf's complaint. In May 2017, the trial court resolved the motions by entering summary judgment in favor of Brannon on the complaint.

{¶ 4} Gudorf appealed the trial court's summary judgment decision to this court in *Gudorf Law Group, LLC v. Brannon*, 2d Dist. Montgomery No. 27628 ("*Gudorf I*"). We dismissed the appeal on July 24, 2017 for lack of a final, appealable order. We noted that the trial court had not resolved Brannon's counterclaims and had not included Civ.R.

54(B) certification. We also observed that Brannon had filed a sanctions motion, which remained pending in the trial court. The sanctions motion had been filed after the trial court's summary judgment ruling but before Gudorf's notice of appeal. We opined that the sanctions motion "may need to be resolved, or Civ.R. 54(B) certification added, before the matter is considered final." *Gudorf I*, July 24, 2017 Decision and Final Judgment Entry.

{¶ 5} After we dismissed *Gudorf I*, the trial court scheduled a bench trial on Brannon's counterclaims and sanctions motion. On August 25, 2017, Brannon voluntarily dismissed his counterclaims, leaving his sanctions motion pending. The trial court proceeded to hold a hearing on the issue of sanctions. After the hearing, the trial court filed a January 2, 2018 decision and judgment entry denying sanctions against Gudorf and also overruling a motion by Gudorf for reconsideration of the earlier summary judgment decision in favor of Brannon. Gudorf filed a notice of appeal on January 31, 2018, instituting the present case. Brannon moved to dismiss the appeal as untimely. Brannon acknowledged that Gudorf filed its notice of appeal within 30 days of the trial court's January 2, 2018 decision and judgment entry. Brannon argued, however, that if Gudorf wanted to challenge the trial court's summary judgment ruling, it should have appealed within 30 days of his August 25, 2017 notice of voluntary dismissal of his counterclaims. Brannon reasoned that his dismissal of the counterclaims made the summary judgment decision final and appealable. In response, Gudorf asserted that the pending sanctions motion precluded finality until the trial court resolved the sanctions issue.

{¶ 6} In a June 15, 2018, decision and entry, we overruled Brannon's motion to dismiss the present appeal. We noted that the order designated in Gudorf's notice of

appeal was the trial court's January 2, 2018 decision and judgment entry, which was final and appealable. Because Gudorf filed a timely notice of appeal on January 31, 2018, we held that we had jurisdiction over this appeal. As for whether Gudorf could assign as error in this appeal the trial court's May 2017 summary judgment decision, we explained that we would "consider that argument with the merits of the appeal after all the briefs have been filed." Briefing now has been completed, and the foregoing issues are before us for resolution.

{¶ 7} We turn first to Brannon's contention that Gudorf cannot raise as error in this appeal the trial court's May 2017 entry of summary judgment on Gudorf's complaint. Based on our review of the record, we are inclined to agree with Gudorf's argument that Brannon's pending sanctions motion precluded finality until the trial court resolved the sanctions issue. That being so, the trial court's interlocutory summary judgment decision became final when the trial court filed its January 2, 2018 decision and judgment entry denying sanctions. Because Gudorf timely appealed from the sanctions decision, we believe the trial court's May 2017 summary judgment decision also is properly before us. We need not dwell on this issue, however, for two reasons. First, the present appeal itself is properly before us because Gudorf filed a timely notice of appeal from the trial court's January 2, 2018 decision and judgment entry. Second, even if we accept, arguendo, that Gudorf's appeal encompasses the trial court's summary judgment decision, we see no error in that decision. As we will explain more fully in the analysis that follows, the trial court properly entered summary judgment in favor of Brannon on Gudorf's complaint.

{¶ 8} In its first assignment of error, Gudorf challenges the trial court's entry of summary judgment in favor of Brannon on the law firm's claims for breach of a written

employment contract or, alternatively, for breach of a subsequent oral agreement. Both claims alleged that Brannon left the Gudorf firm and took a client with him, ultimately obtaining a favorable settlement for the client and earning a substantial fee. The claims for breach of the written and oral agreements asserted that Gudorf was entitled to be compensated for the departed client.

{¶ 9} The claim in the complaint regarding the written contract concerned Gudorf's employment agreement with Brannon. Under the terms of that agreement, Gudorf's entitlement to compensation for the departed client depends on whether the client was "a direct client referral" of Brannon. The employment agreement provides a formula for Gudorf to obtain compensation if the client Brannon took with him *was not* "a direct client referral of Employee." The trial court concluded that the client *was* a direct client referral of Brannon, the employee, because the client was referred to him by his father, Dwight Brannon. Because the client was a direct client referral, the trial court held that Gudorf was not entitled to any compensation under the employment agreement.

{¶ 10} On appeal, Gudorf contends the trial court erred in holding that the client Brannon took with him when he left the firm was a "direct client referral" of Brannon. Gudorf's substantive argument is as follows:

> * * * [T]he Court determined GLG's claim of breach of written contract solely on its own interpretation of the meaning of the undefined term "direct client referral of Employee." Gudorf swore under oath at his deposition that his understanding of the meaning of that term was that it referred to one who was already a client of the employee before the employee was hired. See Gudorf depo. p. 141. Appellant submits that this

is an entirely reasonable interpretation of the term. In opposition to that, Appellee merely argued, without sworn testimony from Brannon as to his understanding, that the term meant any client that may have been referred to him by a third party, regardless of whether he brought the client with him, or was assigned primary responsibility for the client after becoming an employee.

Initially, Appellant submits that Brannon's mere argument does not constitute the type of evidence required by Civ.R 56(C), and for this reason alone, Brannon did not meet his initial burden of demonstrating the absence of a genuine issue of material fact. Additionally, even if the Court could consider Brannon's argument, or the words used in the agreement itself, as satisfying that initial burden, Gudorf's testimony and differing understanding did, at the very least, create a genuine issue of material fact. Thus, paragraph 10b of the agreement called for compensation to GLG in the event that the employee left the firm and a client who was initially not a direct client referral of Employee became a "client or account of employee . . . ." As a result, summary judgment on the breach of written contract claim was inappropriate.

(Appellant's brief at 9.)

{¶ 11} Upon review, we find Gudorf's argument to be unpersuasive. Neither the parties nor a court can create ambiguity in a contract where none exists. "A contract that is, by its terms, clear and unambiguous requires no real interpretation or construction and will be given the effect called for by the plain language of the contract." (Citation omitted)

*Westerfield v. Three Rivers Nursing & Rehab. Ctr., L.L.C.*, 2d Dist. Montgomery No. 25347, 2013-Ohio-512, ¶ 21. When a contract is clear and unambiguous, a court has no occasion to consider extrinsic evidence and "cannot apply principles of construction to vary its terms." (Citation omitted) *Siatis v. Shaw*, 2d Dist. Montgomery No. 19207, 2003-Ohio-616, ¶ 30.

{¶ 12} In the present case, the trial court reviewed the parties' employment agreement and reasoned:

Section 10[b] of the employment agreement governs the current situation where the employee leaves employment and continues representation of a client that commenced while subject to the agreement. It provides in part "In the event that any client or account of the Company <u>who is not a direct client referral of Employee</u> shall, …" (emphasis added). Attached to defendant's motion is the affidavit of the client Devon Ramon LeGore who states, in part, under oath "3. I first contacted Dwight Brannon of Brannon and Associates approximately June of 2013 regarding my case. Dwight Brannon referred me directly to David D. Brannon because of his expertise in probate and litigation matters, who was employed by Gudorf Law Group., L.L.C."

The employment agreement created an exception under these circumstances whereby the employee would not be responsible under the employment agreement to reimburse the employer for fees collected. The plaintiff does not provide any 56(C) evidence to the contrary or to offset the LeGore affidavit. Since LeGore was a direct referral to Brannon, Gudorf has

no claim for fees from Brannon under the written contract and summary judgment is granted to Brannon on the written contract claim.

(May 22, 2017, Summary Judgment Decision at 3-4.)

{¶ 13} Whether a contract is ambiguous is a legal question that we review de novo. *Hulse v. Hulse*, 2d Dist. Greene No. 2013-CA-30, 2014-Ohio-1106, ¶ 15. Here we conclude that the pertinent language in the employment agreement was clear and unambiguous. It provided for Gudorf to be compensated if, within one year after the termination of Brannon's employment, a Gudorf client "who is not a direct client referral of Employee" ceased being Gudorf's client and became Brannon's client. (Complaint at Exh. A, ¶ 10b.) As the trial court correctly observed, the uncontroverted evidence established that the client, Devon LeGore, was directly referred to David Brannon while he was employed by Gudorf. Therefore, under the clear and unambiguous language of the employment agreement, LeGore *was* a direct client referral of employee Brannon. That being so, Gudorf was not entitled to be compensated when Brannon terminated his employment and took the client with him. Contrary to Gudorf's argument on appeal, nothing in the "direct client referral" language limited it to clients who were referred to the employee before the employee was hired by Gudorf.

{¶ 14} The fact that Gudorf presented evidence in the form of deposition testimony from Ted Gudorf as to his contrary understanding of the employment agreement is immaterial. As noted above, where contract language is unambiguous, a court may not consider extrinsic evidence as to the parties' subjective understanding. Instead, the plain language of their agreement controls. We find that to be the case here. Accordingly, we hold that the employment agreement did not entitle Gudorf to be compensated for

LeGore's departure because the client was a "direct client referral" of Brannon.[1]

{¶ 15} Gudorf next maintains that it is entitled to be compensated even if, as we have found, LeGore was a direct client referral of Brannon. Gudorf bases this argument on an alleged oral contract. According to Ted Gudorf, at the time of Brannon's departure they orally agreed to a "pro rata" split of any fee Brannon later earned from the client. The trial court found that such an agreement was precluded by an integration clause in Brannon's written employment agreement with Gudorf. On appeal, Gudorf contends the clause does not apply. Gudorf reasons that the employment agreement only concerned its entitlement to compensation for a departed client who *was not* a direct client referral. If, as here, the client *was* a direct client referral, then Gudorf claims its entitlement to compensation was a matter beyond the scope of the employment agreement and was the proper subject of a separate oral agreement.

{¶ 16} Once again, we find Gudorf's argument to be unpersuasive. The integration clause in the parties' employment agreement provided in relevant part: "This Agreement sets forth the entire agreement and understanding of the parties concerning the subject matter hereof * * * and no modification hereof shall be binding upon the parties hereto except by written instrument[.]" (Complaint at Exh. A, ¶ 13.) As set forth above, the subject matter of the employment agreement included compensation for Gudorf if an employee left the firm and took a client with him. The agreement explicitly provided that it was the parties' "entire agreement" and that the law firm was to be compensated if the departing client was not a direct client referral. It logically follows that the parties did not intend for

---

[1] In light of this determination, we need not address Brannon's alternative argument that the exclusive remedy for the breach of contract alleged by Gudorf was an action in probate court.

Gudorf to be compensated if the client was a direct client referral. Otherwise, there would have been no reason for the agreement to make the distinction. Therefore, we conclude that an oral agreement providing for Gudorf to be compensated for the departure of LeGore, who was a direct client referral, impermissibly would modify the written employment agreement and would run afoul of the integration clause. The first assignment of error is overruled.

{¶ 17} In its second assignment of error, Gudorf contends the trial court erred in denying reconsideration of the May 2017 summary judgment ruling in favor of Brannon on Gudorf's complaint.

{¶ 18} The record reflects that Gudorf orally moved for reconsideration of the adverse summary judgment decision at the conclusion of an October 31, 2017 hearing on Brannon's motion for sanctions. (October 31, 2017 Tr. at 202-203.) Gudorf based the reconsideration request on Brannon's hearing testimony acknowledging (1) that the employment agreement did not explicitly mention a departing client who *was* a direct client referral and (2) that conversations had occurred during which Ted Gudorf asserted a right to a pro-rata share of any fee Brannon obtained in the LeGore case. (*Id.* at 72-96.) In light of this testimony, Gudorf urged the trial court to reconsider its summary judgment ruling. In response to Gudorf's oral motion for reconsideration, the trial court questioned whether the hearing testimony was proper Civ.R. 56 evidence. (*Id.* at 206-207.) The trial court also indicated that it did not intend to revisit summary judgment, but did allow the parties to file post-hearing briefs. (*Id.* at 207.) On November 21, 2017, Gudorf followed up with a memorandum requesting reconsideration. (Doc. #9.) The trial court denied reconsideration of its summary judgment ruling and also overruled Brannon's sanctions

motion in a January 2, 2018 decision and judgment entry. (Doc. #13.) In support of its decision to deny reconsideration of summary judgment, the trial court reasoned:

> * * * To the extent that the Court was not clear when it stated at the hearing that it would not reconsider its decision on the motions for summary judgment, the Court specifically overrules any such motion or request. The issue of summary judgment reconsideration was not before the Court at the hearing on October 31, 2017, as the Court's entry, after the filing of the defendant's Rule 41(A) notice of dismissal, specifically indicated that the trial would go forward on defendant's motion for sanctions only. To permit reconsideration at this hearing, where only the parties testify and only the exhibits existing between the parties were admitted, and where no notice of the reconsideration was given to the other party, would be patently unfair as any additional information discovered could have been easily uncovered by appropriate discovery and submitted properly under Civ.R. 56(C). In addition, there are other remedies in the civil rules for prosecuting such a request.

(*Id.* at 2.)

{¶ 19} On appeal, Gudorf challenges the trial court's statement at the close of the sanctions hearing that it did not believe Brannon's hearing testimony constituted proper Civ.R. 56 evidence. Gudorf stresses that Civ.R. 56(C) permits the use of "transcripts of evidence" in resolving a summary judgment motion. Gudorf also points out that a trial court may entertain a motion for reconsideration any time prior to the entry of final judgment. Gudorf asserts that the trial court's summary judgment ruling remained

interlocutory because Brannon's motion for sanctions remained pending. Therefore, Gudorf contends the trial court erred "in its refusal to even entertain the motion for reconsideration." (Appellant's brief at 12.)

{¶ 20} Upon review, we find Gudorf's argument to be without merit. As an initial matter, the trial court's January 2, 2018 written decision reflects that it denied reconsideration primarily on the basis of fairness. The trial court found it inappropriate to revisit summary judgment in the context of a hearing that had been limited to sanctions. Regardless, we have examined the hearing transcript, and we see no arguable basis for reconsideration even if we accept Gudorf's claim that the hearing testimony constituted proper Civ.R. 56 evidence and that the trial court retained jurisdiction to reconsider its summary judgment ruling.

{¶ 21} In light of our analysis above, it matters not what Brannon stated during the hearing about whether LeGore was a "direct client referral," whether the employment agreement addressed departing clients who were not direct client referrals, or whether Ted Gudorf orally had asserted a right to compensation for LeGore's departure. In resolving Gudorf's first assignment of error, we held that LeGore was a "direct client referral" under the clear and unambiguous terms of the employment agreement. We also held that the subject matter of the employment agreement included compensation for Gudorf if an employee left the firm and took a client with him. We noted that the agreement provided for the law firm to be compensated if the departing client was not a direct client referral, indicating that the parties did not intend for Gudorf to be compensated if the client was a direct client referral. Therefore, we concluded that any oral agreement providing for Gudorf to be compensated for LeGore's departure impermissibly would modify the

written agreement in violation of the integration clause. For that reason, it is immaterial whether Ted Gudorf asserted a right to a pro-rata share of any fee Brannon obtained for representing LeGore. Even if Brannon orally had agreed to such an arrangement (which he denied), the oral agreement would not be enforceable in light of the integration clause. In short, we see nothing in Brannon's hearing testimony that could have provided the trial court with any grounds to reconsider its summary judgment decision. Accordingly, the trial court did not err in denying reconsideration. The second assignment of error is overruled.

{¶ 22} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J., concurs.

FROELICH, J., dissents:

{¶ 23} The trial court held that Devin LeGore was a "direct client referral of" David Brannon and therefore the Gudorf firm was not entitled to any compensation for the work done by Brannon while at the firm or from the settlement after Brannon left the firm. Because the contract is ambiguous and there are genuine issues of material fact as to whether LeGore was "not a direct client referral of Employee," I would conclude that the trial court erred in granting summary judgment to Brannon on the claim by Gudorf based on the employment contract.   I would also conclude that the parties' alleged subsequent oral agreement addressing Brannon's representation of LeGore was not barred by the employment contract.

{¶ 24} Contracts are to be read as a whole, giving effect to every part of the

agreement and avoiding any interpretation of one part that will annul another part.   *E.g.,*

*Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio

St.3d 353, 363, 678 N.E.2d 519 (1997).   When reviewing a contract, the court's primary

role is to ascertain and give effect to the intent of the parties.   *Hamilton Ins. Serv., Inc.*

*v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (1999).   A contract is

ambiguous if its provisions are susceptible to two or more reasonable interpretations.

*Johnson v. Johnson*, 2d Dist. Miami No. 2010 CA 2, 2011-Ohio-500, ¶ 11.   Language in

an agreement need not be totally incomprehensible[2] to be ambiguous.   *E.g., Becker v.*

*Direct Energy, LP*, 2018-Ohio-4134, 112 N.E.3d 978, ¶ 51 (2d Dist.).

{¶ 25} The ambiguity of the phrase "any client or account of the company who is

not a direct client referral of Employee" is evident when read in context of the entire

employment agreement.   The contract provides that all clients of the employee/attorney

are clients of the employer firm and that all papers, files, documents, etc. relating to clients

are the exclusive property of the employer, including the files relating to the firm's client

the employee took with him.   (It is undisputed that LeGore was referred to Brannon after

Brannon joined the Gudorf firm.)   And, it requires the employee to devote his entire time,

attention, and energies to the business of the employer-firm.   The compensation section

specifically provides for different commissions for clients "brought into" the employer by

the employee and for clients where the employee handles the initial intake and all

subsequent work together with the use of the employer's staff.

{¶ 26} The phrase "not a direct client referral of Employee" is under the non-

---

[2] *See Catholic Health Initiatives-Iowa Corp. v. Sebelius*, 841 F.Supp.2d 270, 271 (D.D.C. 2012) (describing a Medicare statute as a law "written by James Joyce and edited by E.E. Cummings").

competition section (section 10) of the employment contract, as opposed to the compensation section (section 6). The phrase is not defined in the agreement and, in my view, has no obvious singular meaning when read in light of the entire contract (particularly the compensation provision regarding clients "brought into" the firm by the employee-attorney) and with an eye toward giving effect to all terms. Parol evidence, therefore, can be used to interpret and resolve the ambiguity. *See, e.g., Bank of New York Mellon v. Rhiel*, 155 Ohio St.3d 558, 2018-Ohio-5087, 122 N.E.3d 1219, ¶ 12; *Illinois Controls, Inc. v. Langham*, 70 Ohio St.3d 512, 639 N.E.2d 771 (1994) ("It is axiomatic that, where a contract is ambiguous, parol evidence may be employed to resolve the ambiguity and ascertain the intention of the parties.").

**{¶ 27}** During his deposition, Gudorf was asked if LaGore was a direct client referral to Brannon. Gudorf responded, "So based upon what we previously have discussed, direct client referral means a client for which employee was actually under fee contract or other documented engagement and actually representing or performing billable services for the client in the employee's former practice prior to employment by Gudorf Law Group." (Gudorf Depo. at 141.) Gudorf further stated that LaGore became a client of Brannon's after Brannon's employment with the Gudorf firm began, and thus was not a direct client referral. (*Id.* at 141-144.)

**{¶ 28}** The trial court's interpretation of "not a direct client referral of employee" or, in reality, its clarification of its presumed opposite ("direct client referral of employee") is not unreasonable; but neither are others. Brannon had one interpretation of the phrase; Gudorf had another. The judges of this court also disagree as to the intent of the contract. There is certainly some irony in lawyers and judges disagreeing on the

meaning of a phrase that is ostensibly viewed as having only one meaning; in such a situation, it is the trier of fact, after hearing from the parties, that should decide what the parties meant by a phrase the parties used in the context of their professional contract.

{¶ 29} Second, Brannon argues that any alleged understanding not in writing between the parties subsequent to the original contact is barred by the integration clause of the employment agreement. Since the effect of an integration clause makes a subsequent agreement no more integrated than in the absence of such a clause, *Galmish v. Cicchini*, 90 Ohio St.3d 22, 28, 723 N.E.2d 782 (2000), its presence does not preclude the parties to the contract from agreeing on what the contract means, provided that their subsequent understanding does not conflict with the written agreement.

{¶ 30} The contract demonstrates that there was, as part of the *initial* employment contract, an understanding that the employee/attorney could not use the resources of the employer/firm and take the employer's client without some sort of compensation. Even if the "not a direct client referral" language were not ambiguous, it explains only what happens if the employee-attorney leaves and takes a firm client that is "not a direct client referral" client from the employer. There is no explanation of how to deal with a client who *is* a direct client referral of employee. The presence of a means of compensation for a client of the firm that is "not a direct client referral of employee" does not necessarily mean that there was no compensation contemplated by the parties for a firm client that was a "direct referral."

{¶ 31} A subsequent understanding between a law firm and its employee-lawyer regarding the means of compensating for work done at the firm regarding an unaddressed

category of clients is arguably not a modification the contract,[3] but a supplemental interpretation consistent with the original contract. As stated above, section 9 (ownership of records) provides that all papers, files, documents, etc. relating to clients are the exclusive property of the employer, including the files relating to the firm's client the employee took with him. Further, section 4 (duties) requires the employee to devote his entire time, attention, and energies to the business of the employer. A finding that the employer receives no compensation for a direct client referral appears to be at odds with these provisions and at the least adds to the ambiguity of the entire contract.

{¶ 32} I would remand for the court to determine from the evidence the intent of the parties.

Copies sent to:

Richard Hempfling
Matthew C. Schultz
David D. Brannon
Hon. Timothy J. Campbell

---

[3] To modify means 'to change in form or character, to alter.' " (Citation omitted.) *Herbert v. Porter*, 3d Dist. Seneca No. 13-05-15, 2006-Ohio-355, ¶ 25.